**Jack R. STERN, Appellant,**

v.

**The STATE of Texas, ex rel Walter ANSEL and Oleva "Bo" Randall, Appellees.**

No. C14–92–01362–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 6, 1994.

Rehearing Denied Jan. 11, 1994.

Keith Hampton, David S. O'Neill, Lynne Liberato, Maria Teresa Arguindegui and Jeff Nobles, Houston, for appellant.

Rusty Hardin, Cathleen C. Herasimchuk, Houston, for appellees.

Before ROBERTSON and CANNON, JJ., and MORSE, J., sitting by designation.

## OPINION

CANNON, Justice.

This is an appeal from a judgment removing Jack R. Stern from the office of District Attorney for Fort Bend County. Relators alleged incompetence and official misconduct under the Texas Removal Statute as grounds for Mr. Stern's removal. TEX.LOCAL GOV'T CODE ANN. § 87.013 (Vernon 1988). The crux of the complaint against Jack Stern is twofold: (1) he publicly released transcripts of grand jury testimony, and (2) he abused a grand jury witness.[1] This combined conduct forms the bedrock upon which the removal action was founded. After trial, the jury returned a verdict removing Stern from office for official misconduct and incompetent behavior. Stern comes before this Court asserting thirteen points of error, variously grouped. We affirm.

In his first two points of error, Stern asserts that the court below erred in denying his Motion for Directed Verdict and Motion for Judgment *non obstante veredicto* because there was no evidence that he was guilty of either official misconduct or incompetence. In his second point, he alleges that the trial court erred by denying his Motion for a New Trial because the evidence was factually insufficient to show that he was guilty of either official misconduct or incompetence.

■ A directed verdict is proper (1) when a defect in the opponent's pleadings

1. The public release was accomplished by (1) handing out copies of transcripts of testimony given before the grand jury, (2) attempting to file copies of transcripts of that testimony in the public records department of the Fort Bend County District Clerk's Office, and (3) taking out a full page ad in the Fort Bend/Southwest Star newspaper which substantially revealed what testimony was given before the grand jury.

The background facts of this case are intriguing. Stern warrants as fact that Sheriff Hillegeist and a deputy, Paul Gutheinz, were entangled in a love triangle with a topless dancer by the name of Lori Pyka. Mrs. Pyka was under investigation for arson, and was allegedly using sexual favors to frustrate investigation of this crime. As a result of this investigation, Sheriff Hillegeist, Deputy Gutheinz, Mrs. Pyka, and Captain Ken Lee met briefly at the side of Crabb River Road, allegedly to reassure Gutheinz that his job was not in jeopardy because of his affair with Mrs. Pyka. Seven days later, Sheriff Hillegeist was called before the grand jury and interrogated. He was repeatedly asked whether he had had any meetings with Deputy Gutheinz the previous week. The sheriff said he could recall none.

The grand jury refused to indict Sheriff Hillegeist. District Attorney Stern then publicly released the testimony of Sheriff Hillegeist, Deputy Gutheinz, and Captain Lee in the manner related above. In this testimony, both Gutheinz and Lee admit the meeting took place, clearly contradicting Sheriff Hillegeist's statements. Two of the grand jurors later testified, however, that the Sheriff was never asked specifically about the meeting at Crabb River road, and that they did not think he lied to the grand jury.

District Attorney Stern subsequently subpoenaed Mrs. Pyka to appear before the grand jury on four separate occasions. Before each occasion, Mrs. Pyka's attorney advised Stern that she would plead the Fifth Amendment. Nevertheless, at one session Stern pursued, or permitted his assistant to pursue, such exotic topics as whether Mrs. Pyka had participated in a menage-a-trois, had she stripped naked at a restaurant, was she known as a "psycho," who was the father of her child, what is the Fifth Amendment, what are the first four amendments, and what does "incriminate" mean. He did not divulge this testimony.

makes them insufficient to support a judgment, (2) when the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law, or, (3) when the evidence offered on a cause of action is insufficient to raise an issue of fact. *M.N. Dannenbaum v. Brummerhop*, 840 S.W.2d 624, 629 (Tex.App.—Houston [14th Dist.] 1992, writ denied). When determining whether the trial court's judgment *non obstante veredicto* is proper, the reviewing court must view the evidence admitted at trial in favor of the nonmovant and determine that there is no evidence upon which the jury could have made the findings relied upon. *Id.* at 628. Finally, when reviewing a challenge to the sufficiency of the evidence, this Court must first consider, weigh, and examine all of the evidence which supports and which is contrary to the jury's determination. *Plas-Tex, Inc. v. United States Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). This Court may set aside the verdict only if it is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong, or if the evidence standing alone is too weak to support the finding. *Cain v. Bain*, 709 S.W.2d 175 (Tex.1986) (*per curiam* ).

■ Section 87.013 of the Texas Local Government Code sets forth the exclusive grounds for removal of a public officer, which include (1) incompetency, and (2) official misconduct. Incompetency is defined as gross ignorance of official duties, gross carelessness in the discharge of those duties, or unfitness or inability to discharge those duties due to a serious physical or mental defect. Official misconduct means intentional, unlawful behavior relating to official duties by an officer entrusted with the administration of justice or execution of the law. *It includes an intentional or corrupt failure, refusal, or neglect of an officer to perform a duty imposed on the officer by law.* Tex.Local Gov't Code Ann. § 87.011(2), (3) (Vernon 1988) (emphasis added). A trial court can remove an elected officer only for one of the causes enumerated in section 87.013. *State of Texas ex rel. Eidson v. Edwards*, 793 S.W.2d 1 (Tex.Crim.App. 1990). Furthermore, an elected officer can be removed for official misconduct only if he violates a specific statutory duty that amounts to unlawful conduct. *State ex rel. Edwards v. Reyna*, 160 Tex. 404, 333 S.W.2d 832 (1960).

■ Stern postulates that the jury could not remove him from office because there is no statute prohibiting a district attorney from making grand jury testimony public. Stern relies primarily upon article 20.02 of the Texas Code of Criminal Procedure for authority that only grand jury members and the bailiff are prohibited from divulging anything that transpires before the grand jury. Stern further relies on the language of that statute for the proposition that only the deliberations, e.g. discussions and voting, of the grand jurors are subject to the rule against disclosure, and that it does not apply to testimony given before the grand jury.

■ Appellant misapprehends the purpose of article 20.02. The goal of that article is not to limit the prohibition against disclosure to grand jurors and bailiffs alone. The specific purpose of article 20.02 is to penalize a grand juror or bailiff for making such a disclosure. Nothing in the article suggests that individuals such as witnesses, counsel for the accused, court reporters or state attorneys can publicly divulge events that take place before a grand jury.

District attorneys have a clearly defined statutory and a common law duty to keep grand jury testimony secret. We reach our decision after reviewing the specific articles of the Code of Criminal Procedure that govern grand jury conduct.[2] We give these

---

**2.** The grand jury has always occupied a special role in Texas jurisprudence, and its historical development is of particular relevance to the issues at hand. It has been suggested that the grand jury is of Carlovingian origin, and was used by William the Conqueror in England as early as 1066. Henry II issued his Assize of Claredon in 1166, the first statute to institute the grand jury as we know it today. *See, State v. Revere*, 232 La. 184, 94 So.2d 25 (1957) (historical discussion, authorities cited). Although at first intended to aid the crown in enforcement of its sovereignty, the grand jury quickly gained independence and became a protector of the people from false accusations and oppression. To assist in its endeavors, the grand jury cloaked

articles that reasonable and liberal construction which will result in the accomplishment of the purposes for which they were enacted. *Huntress v. State ex rel. Todd,* 88 S.W.2d 636, 643 (Tex.Civ.App.—San Antonio 1935, writ dism'd). We reject the argument that what is not expressly forbidden by statute is authorized. *Cf., Morrison v. State,* 845 S.W.2d 882, 889, 896 (Tex.Crim.App.1992) (Clinton, J., concurring).

Article 19.34 swears grand jurors to secrecy.[3] Article 19.36 swears bailiffs to secrecy.[4] Article 20.02 provides a penalty for grand jurors and bailiffs who reveal anything that transpires before them during the course of its proceedings in secrecy, so as to protect the identity of witnesses and the target of the investigation, and to encourage truthful testimony. *Id.*

The people of Texas originally had no right to indictment by grand jury under the rule of Spain and Mexico. In fact, it was not until 1834 that citizens of Texas obtained a basic right to *trial* by a jury of their peers. Laws and Decrees, State of Coahuila and Texas, Decree no. 277 (1834), *reprinted in,* 1 H.P.N. GAMMEL 1822–1838, at 364 (1898); *see also,* Introduction To Constitutions of Texas, TEX. CONST. app. 463, 465–466 (Vernon 1993). Investigation and charging of crimes, however, was still carried out by a single official. *Id.* at 369–370.

The provisional government of the Republic of Texas decreed that trial should be by jury; crimes, misdemeanors, and criminal proceedings were to be regulated by common law of England; and that grand juries were to be composed 15 persons. *See,* Ordinances and Decrees of the Consultation, Provisional Government of Texas, *Plans and Powers of the Provisional Government of Texas,* Article VII (Nov. 19, 1835), *reprinted in* TEX. CONST. app. 470, 472 (Vernon 1993); Ordinances and Decrees of the Consultation, Provisional Government of Texas, *Ordinance for opening the several Courts of Justice, appointing Clerks, Prosecuting Attorneys, and defining their duties, etc.,* (Jan. 22, 1836), *reprinted in* 1 H.P.N. GAMMEL, LAWS OF TEXAS 1822–1838, at 1039 (1898).

The Constitution of the Republic of Texas specifically guaranteed persons the right to indictment by grand jury in criminal cases. Constitution of the Republic of Texas, Declaration of Rights, Sixth (1836), *reprinted in* TEX. CONST. app. 482, 493 (Vernon 1993); *compare,* TEX. CONST., art. I., sec. 10. The First Congress declared that the common law of England, as applied to juries and to evidence, was to be the rule of decision in the courts of the Republic, when not inconsistent with statutes. Act approved Dec. 20, 1836, 1st Cong., R.S., sec. 41, 1838 Republic of Texas Laws 148, 156–157, *reprinted in* 1 H.P.N. GAMMEL, LAWS OF TEXAS, 1208, 1216–1217 (1898); *see also* Act approved January 20, 1840, 4th Cong., R.S., sec. 1, 1840 Laws of the Republic of Texas 3, 3–4, *reprinted in,* 2 H.P.N. GAMMEL, LAWS OF TEXAS, 177, 177–178 (1898).

In the first Code of Criminal Procedure promulgated by the State of Texas, the Legislature mandated that the principles of common law were to be the rule of construction when not in conflict with the Penal Code, Code of Criminal Procedure, or some other written statute. Act approved August 26, 1856, 6th Leg., R.S., amended by Act of February 12, 1858, 7th Cong., R.S., ch. 121, 1858 TEX.GEN.LAWS 156, 156, *reprinted in,* 4 H.P.N. GAMMEL, LAWS OF TEXAS 1028, 1028 (1898); *also reprinted in,* G.W. PASCHAL, DIGEST OF THE LAWS OF TEXAS 396 (art. 1606) (1866). Likewise, where the Code of Criminal Procedure failed to provide a rule of procedure, common law was to control. *See,* G.W. PASCHAL, DIGEST OF THE LAWS OF TEXAS, 476 (art. 2493) (1866).

The Code of 1856 was recodified from 1875 through 1879. The provisions relating to grand jury duties in that Code bear remarkable resemblance to modern provisions. The Code has been recodified periodically by subsequent legislatures, and include codifications for the years 1895, 1916, and 1925. Through each recodification, the provisions relating to grand juries remained surprisingly consistent, and it is the common law origins of the grand jury which forms the foundation for those provisions.

3. An early version of this oath was contained in the Criminal Code enacted in 1846, and required jurors to state they:

> ... solemnly swear that you will diligently inquire into and true presentments make of all such matters and things as shall be given you in charge; the State's counsel, your fellows' and your own you shall keep secret: you shall present no person from envy, hatred or malice, neither shall you leave any person unpresented for love, fear, or favor, affection, or hope of reward, but you shall present things truly as they come to your knowledge, according to the best of your understanding, so help you God.

Act approved May 4, 1846, 1st Leg., R.S., sec. 13, 1846 TEX.GEN.LAWS 170, 174, *reprinted in,* 2 H.P.N. GAMMEL, LAWS OF TEXAS 1476, 1480 (1898); *compare,* TEX.CODE CRIM.PROC.ANN. art. 19.34 (Vernon 1977). For an even earlier version, *see,* Act approved December 22, 1836, 1st Cong., R.S., sec. 33, 1838 Republic of Texas Laws 187, *reprinted in,* 1 H.P.N. GAMMEL, LAWS OF TEXAS 1822–1838, at 1268 (1898).

4. The Code of Criminal Procedure enacted by the Sixth Legislature in 1856 included a provision, Article 358, for swearing bailiffs to secrecy, and which read, in part, "The oath of the bailiff shall be to keep secret the proceedings of the grand jury." *See,* W.S. OLDHAM & G.W. WHITE, DIGEST OF THE GENERAL STATUTE LAWS OF THE STATE OF TEXAS 611 (1959); *see also,* G.W. PASCHAL, DIGEST OF THE LAWS OF TEXAS, 507 (art. 2826) (1866); *compare,* TEX. CODE CRIM.PROC.ANN. art. 19.36 (Vernon 1977).

their official duties.[5] Article 20.16 swears witnesses to secrecy and imposes a penalty upon any witness who reveals the content of his testimony, or any other matter that occurs before the grand jury in his presence.[6] Article 20.03 permits an attorney for the state to appear. Article 20.04 also provides that only grand jurors and the state's attorney have a right to question witnesses. Thus, the attorney for the accused is not entitled to attend the sessions, he is not entitled to cross-examine witnesses, he is not even entitled to be present when the accused is being questioned. No one, other than a witness or the state's attorney may address the grand jury about a matter that is before it. The accused, or the attorney for the accused, may, on their own initiative, address the grand jury only if the state's attorney permits. The public is not allowed to attend grand jury sessions.

■ Viewing the scheme of the Code as a whole, grand jury proceedings, including the taking of testimony, are secret. Moreover, article 20.02 clearly proclaims that any grand juror or bailiff who divulges "anything *transpiring* before them in the course of their official duties" shall be in contempt of court (emphasis added). Not only "deliberations" are included within the ambit of the rule of secrecy, but *anything* that takes place before the bailiffs and grand jurors, including testimony. TEX.CODE CRIM.PROC.ANN. art. 20.02 (Vernon Supp.1993) (emphasis added). Texas courts have uniformly followed this rule. *Any* communication made to the grand jury in the regular performance of its duties is secret. *Hott v. Yarborough*, 112 Tex. 179, 245 S.W. 676, 678 (Comm.App.1922, opinion

adopted); *Gutgesell v. State*, 43 S.W. 1016 (Tex.Crim.App.1898), overruled on other grounds by *Addisson v. State*, 85 Tex.Crim. 181, 211 S.W. 225 (1919) ("... it would appear to be the declared policy of our law to make secret all of the proceedings before the grand jury...."); *see also, Ex parte Port*, 674 S.W.2d 772, 779, n. 8 (Tex.Crim.App. 1984), overruled on other grounds by *Ex parte Edone*, 740 S.W.2d 446 (Tex.Crim.App. 1987); *Quarles v. State*, 385 S.W.2d 395, 397 (Tex.Crim.App.1964), *cert. denied*, 382 U.S. 829, 86 S.Ct. 65, 15 L.Ed.2d 73 (1965).

■ A prosecuting attorney is the servant of the grand jury. Among his many duties, the prosecuting attorney takes custody of evidence that is submitted for the grand jury's consideration. It must always be remembered, however, that evidence and testimony presented to the grand jury remains in the possession of that institution even though it is physically held by officials who take custody of such records and files. *See*, Tex.Att'y Gen. ORD–398 (1983); *cf., Taylor v. State*, 87 Tex.Crim. 330, 221 S.W. 611, 614 (1919). As such, these matters are not subject to public disclosure, and where the grand jury members have no authority to disclose, their servants have no authority to disclose.

The policy reasons for secrecy are compelling. It ensures the utmost freedom to the grand jury in its deliberations. It prevents other persons subject to indictment, or their friends, from importuning the grand jurors; no undue influence should be permitted to sway its counsels or govern its action. Moreover, grand jurors should be free from the

---

5. This provision is first codified as Article 372 in the Criminal Code enacted by the Sixth Legislature in 1856. That version provided:

> The deliberations of the grand jury shall be secret, and any member of that body, or bailiff, who divulges anything transpiring before them in the course of their official duties, shall be liable to a fine, as for contempt of the court, not exceeding 100 dollars, and to imprisonment, not exceeding 5 days.

*See*, W.S. OLDHAM AND G.W. WHITE, A DIGEST OF THE GENERAL STATUTE LAWS OF THE STATE OF TEXAS, 612 (1859); *see also*, G.W. PASCHAL, A DIGEST OF THE LAWS OF TEXAS, 507–508 (art. 2840) (1866); *compare*, TEX.CODE CRIM.PROC.ANN. art. 20.02 (Vernon 1977).

6. The Code of Criminal Procedure enacted by the Sixth Legislature in 1856 contained the following provision in Article 382:

> Witnesses shall first be sworn to by the foreman not to divulge, either by words or signs, any matter about which they may be interrogated, and to keep secret all proceedings which may be had in their presence.

*See*, W.S. OLDHAM & G.W. WHITE, DIGEST OF THE GENERAL STATUTE LAWS OF THE STATE OF TEXAS 613 (1859); *see also* G.W. PASCHAL, DIGEST OF THE LAWS OF TEXAS, 508 (art. 2850) (1866); *compare*, TEX. CODE CRIM.PROC.ANN. art. 20.16 (Vernon 1977).

apprehension that someone may disclose subsequently their opinions and votes. The requirement of confidentiality also prevents subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted. Further, secrecy encourages free and untrammeled disclosures by persons who have information with respect to the commission of crimes. Witnesses can give evidence without fear of reprisal from an accused or any other person. Confidentiality also protects the innocent accused who is exonerated from disclosure of the fact that he has been under investigation. Such a consideration is particularly important in light of the fact that an elected official's reputation may be irreparably harmed by public disclosure even though investigation of the allegations reveals no basis for prosecution. It also saves persons who have been cleared by the grand jury from the expense of standing trial where there was no probability of guilt. Additionally, the requirement saves the public the trouble, expense, and disgrace of having matters disclosed that no longer have any merit. Finally, grand jury secrecy also prevents the escape of those whose indictment is contemplated. *See, Rothschild v. State,* 7 Tex.Ct. App. 519, 537 (1880); *Euresti v. Valdez,* 769 S.W.2d 575, 582 (Tex.App.—Corpus Christi 1989, no writ) (C.J. Nye, dissenting); *see also, United States v. Proctor & Gamble Company,* 356 U.S. 677, 681, n. 6, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958) (listing five public policy reasons enumerated above); William P. Cannon, Comment, *The Propriety of a Breach of Grand Jury Secrecy When No Indictment is Returned,* 7 Hous.L.Rev. 341, 345–346 (1970).[7]

Texas courts have permitted the veil of grand jury secrecy to be pierced in only a few instances. Evidence of what transpired before a grand jury is admissible only when, *in the judgment of the court,* it becomes material to the administration of justice that

disclosure be allowed. *Wisdom v. State,* 42 Tex.Crim. 579, 61 S.W. 926, 927 (1901); *Hines v. State,* 37 Tex.Crim. 339, 39 S.W. 935, 936 (1897) (grand jury testimony admissible to impeach witness or prove perjury); *Spangler v. State,* 41 Tex.Crim. 424, 55 S.W. 326, 329 (1900) (grand jury testimony may be used to refresh memory of witness); *Addison v. State,* 85 Tex.Crim. 181, 211 S.W. 225 (1919) (grand jury testimony may be disclosed to show circumstances in which grand jury secrets became known); *Rothschild v. State,* 7 Tex.Ct.App. 519, 537 (1880) (veil of grand jury secrecy may be pierced to determine whether jury was made up of required number of persons); *Trevino v. State,* 27 Tex.App. 372, 11 S.W. 447 (1889), overruled on other grounds by *Singleton v. State,* 171 Tex.Crim. 196, 346 S.W.2d 328, 330 (1961) (grand jury secrecy may be pierced to determine whether unauthorized person was present when the jurors were deliberating or voting); *Euresti v. Valdez,* 769 S.W.2d 575, 582 (Tex.App.—Corpus Christi 1989, no writ) (grand jury testimony may be divulged to prove elements of malicious prosecution). We find it compelling that in each instance in which disclosure may be obtained, it may only be obtained by *judicial order.* We find no case in the jurisprudence of this state that suggests a prosecutor, court reporter, or any other individual, may unilaterally disclose the contents of grand jury testimony while a grand jury investigation is in progress.

Appellant urges that there has long been a distinction between "deliberations" and the taking of testimony by the grand jury. *Haywood v. State,* 61 Tex.Crim. 92, 134 S.W. 218 (1910); *McGregor v. State,* 83 Tex.Crim. 35, 201 S.W. 184 (1918); *Johnson v. State,* 131 Tex.Crim. 23, 95 S.W.2d 697 (1936); *Euresti v. Valdez,* 769 S.W.2d 575 (Tex.App.—Corpus Christi 1989. no writ) (Dorsey, J., concurring). We do agree that such a distinction has been made; however, the distinction re-

---

7. For more than a century several of our sister states have held the rule of grand jury secrecy inviolate and have applied it to state prosecutors and others present or participating in the grand jury system. *See Clark v. Field,* 12 Vt. 485 (1839) (duty of secrecy applies to jurors, state attorney, and witnesses); *Little v. Commonwealth,* 66 Va. 921, 931 (1874) (rule includes clerk and prose-

cuting attorney); *McLellan v. Richardson,* 13 Me. 82, 86 (1836) (rule of secrecy applies to county attorney); *People v. Thompson,* 122 Mich. 411, 81 N.W. 344, 347 (1899) (public policy does not permit prosecutor to divulge secrets); *see also State v. Kemp,* 126 Conn. 60, 9 A.2d 63, 68 (1939) (rule of secrecy applies to prosecutor and his assistants).

lates specifically to times when a party to a law suit or criminal proceeding may gain access to events that occurred before the grand jury. Although each of the cases appellant relies on provides examples of when the veil of grand jury secrecy may be pierced, and to what extent, none of them suggests that testimony before the grand jury is not secret, but that discussions and voting are secret. In fact, the cases stand for the opposite proposition: all these events are secret except in specifically enumerated instances.

 Stern also argues that criticism of public officials is guaranteed by the First Amendment. Stern's reliance on *Butterworth v. Smith,* 494 U.S. 624, 110 S.Ct. 1376, 108 L.Ed.2d 572 (1990), however, is misplaced. *Butterworth* interpreted a Florida statute which imposed a requirement of confidentiality on grand jury witnesses. That case specifically held that a grand jury witness had a First Amendment free speech right to publish the content of *his own testimony* after the grand jury investigation is completed and the grand jury session has ended. *Butterworth,* 494 U.S. at 631–637, 110 S.Ct. at 1381–1383. The Supreme Court's holding, however, is limited to information that a person possesses *before* testifying. The Court specifically pointed out that information obtained as a result of participation in grand jury proceedings was subject to the Florida statute. Thus, we hold that a prosecutor's right to free speech does not extend to divulging confidential information which he has access to in his official capacity.

The Texas Code of Criminal Procedure places great importance upon maintaining the secrecy of what transpires before the grand jury. Standing behind the Code is the common law rule that the proceedings of the grand jury are secret. We hold that prosecutors have both a *clear statutory* and a common law duty to keep secret the proceedings of the grand jury. By publicly disclosing transcripts of testimony given before the grand jury, Stern intentionally failed, refused, or neglected to perform a duty imposed upon him by law. This was evidence that Jack Stern engaged in official misconduct. The trial court did not err in denying

Stern's motions for directed verdict, judgment *non obstante veredicto,* and new trial.

 Even if this Court were inclined to hold that Stern had no clear statutory duty to keep grand jury proceedings secret, we would still hold that there was evidence to support the jury's finding of incompetence. This evidence supported the jury's finding that releasing transcripts of grand jury testimony to the public was gross carelessness. We base our conclusion on our determination that a common law duty to preserve the confidentiality of grand jury proceedings exists. No violation of a statutory provision is necessary to support a finding of incompetency. The holding in *Reyna* applies only to charges of official misconduct. The trial court did not err in denying Stern's motions for directed verdict, judgment *non obstante veredicto,* and new trial.

 Furthermore, there was evidence that Stern repeatedly subpoenaed Lori Pyka to appear before the grand jury after being advised by her attorney that she would assert her Fifth Amendment right against self-incrimination. There was also evidence that Stern asked Lori Pyka questions of a highly personal and embarrassing nature. Incompetency encompasses gross carelessness in the discharge of official duties. The jury was free to conclude that Stern badgered and harassed Mrs. Pyka and thus was grossly careless of her rights while discharging his duties as prosecutor. Consequently, the trial court did not err in denying Stern's motions for directed verdict, judgment *non obstante veredicto,* and new trial. We overrule appellant's complaint that there was no evidence he was incompetent.

 In conclusion, we wish to point out that we are not holding that prosecutors may never discuss, in general terms, grand jury proceedings. In fact, most prosecutors discuss what they expect to prove or plan to investigate. To pull such a cloak of absolute secrecy about grand jury proceedings would be futile in this era of mass communication where it is easily known which witnesses are appearing before the grand jury, the reason for their appearance, and even what they are likely to discuss. The requirement of secre-

cy should be imposed only to the extent that it contributes to the effectiveness of the grand jury as that institution carries out its investigative and screening functions. Beyond that, however, the requirement of confidentiality serves no purpose. *Cf., Wisdom v. State*, 42 Tex.Crim. 579, 61 S.W. 926, 927 (1901). What set Jack Stern's conduct apart is that he disclosed transcripts of actual grand jury testimony *after* that institution *refused* to indict a prominent county official for perjury. Stern's conduct defeated at least four primary goals of the grand jury: (1) protection from disclosure of the person under investigation who is later exonerated; (2) keeping grand jurors free from outside pressures; (3) securing to the grand jurors freedom from the apprehension that someone may disclose subsequently their opinions and votes; and, (4) protection of witnesses from the fear of reprisal. Had Stern not divulged the grand jury testimony, the public would never had known of the accusations against Sheriff Hillegeist; his reputation would have remained untarnished. Stern's disclosures also amounted to an attempt to influence the grand jurors through the media. Furthermore, prominent members of Hillegeist's political party who were also members of the grand jury would not have been placed in a position where members of the public could speculate on the reasons the grand jury refused to indict the sheriff. Finally, the witnesses who testified, employees of the sheriff's department, would not have had to fear the possibility, however remote, of reprisal. We overrule appellant's first two points of error.

▇▇▇ In his third point, Stern challenges the trial court's instruction to the jury. That instruction stated:

The taking of testimony from witnesses is part of the deliberations of the Grand Jury. It is unlawful for a District Attorney to publish or reveal the testimony of a witness before the Grand Jury without first securing authority to do so from the District Court.

Appellant argues that this instruction manifestly misstated the law and was highly prejudicial. We do not agree. As we have previously discussed, it is unlawful for any individual, including a district attorney, to publish or reveal the testimony of a witness before the grand jury without first securing authority to do so from the district court. Thus, the instruction was a correct statement of Texas law. The statement that the taking of testimony is a part of the deliberations of the grand jury, while not literally correct, is nonetheless a substantially correct statement that testimony is part of the grand jury process that is subject to secrecy. Based upon the foregoing, we overrule appellant's third point of error.

In points of error four through seven, appellant challenges the jury charge. In point four, he alleges the judge erroneously submitted the case on special issues. In the fifth, sixth, and seventh points, appellant claims that the jury questions contained (1) numerous, severe comments on the weight of the evidence, (2) marshalled evidence on behalf of the State, and (3) were shades or phrases of other questions. The jury charges appellant complains of read:

1. Do you find, by a preponderance of the evidence, that on August 4, 1992, Jack R. Stern, District Attorney of Fort Bend County, was incompetent or engaged in official misconduct by releasing to the public the grand jury testimony of Perry Hillegeist, Ken Lee, and Paul Gutheinz; this public release being accomplished by giving the grand jury testimony to various members of the media, including Houston Chronicle Reporter Patti Muck and Fort Bend/Southwest Star reporter Susan Bankston.

2. Do you find, by a preponderance of the evidence, that on August 4, 1992, Jack R. Stern, District Attorney of Fort Bend County, was incompetent or engaged in official misconduct by authorizing the filing of grand jury testimony of Perry Hillegeist, Ken Lee, and Paul Gutheinz in the public records of the District Clerk of Fort Bend County, Texas.

3. Do you find, by a preponderance of the evidence, that on August 4, 1992, Jack R. Stern, District Attorney of Fort Bend County, Texas, was incompetent

by engaging in a course of conduct that was grossly careless of the rights and reputations of others in the discharge of his official duties 1) by repeatedly subpoenaing Lori Pyka before the grand jury after she had been indicted for arson; 2) by repeatedly questioning her in a demeaning manner after the district attorney's office had been informed by her attorney that Lori Pyka would assert her Fifth Amendment privilege to all questioning; 3) by repeatedly asking Lori Pyka irrelevant, demeaning, and improper questions that were unrelated to any legitimate investigatory purpose while she was a witness before the grand jury; 4) by releasing to the media on July 27, 1992, evidence that was to be presented to the grand jury the next day, by telling representatives of the media that the Sheriff had committed aggravated perjury before the grand jury, and by stating to the media his own personal opinion of the Sheriff's guilt of aggravated perjury, all while the grand jury was still considering the matter; and 5) by publishing in the Fort Bend/Southwest Star on July 29, 1992, an advertisement that included repeated statements that 'a high official in the Fort Bend County Sheriff's Department,' referring to Sheriff Perry Hillegeist, committed aggravated perjury before the grand jury, including the statement that: "A high official of the Fort Bend County Sheriff's Department appeared before the grand jury to testify regarding his romantic liaison with Defendant Pyka (a notorious Houston stripper from the Men's Club) and committed aggravated perjury."

■ Appellant bases his claim that the trial court erroneously submitted the case on special issues on the Texas Local Government Code, Section 87.018. That section provides that in a removal case, a judge may not submit special issues to the jury. The section also provides that if more than one ground for removal is alleged, the jury shall indicate which grounds are sustained, and which are not. Each separate act of incompetence or official misconduct may be separately presented to the jury. We have examined the charge and agree with appellees that each separate act was properly submitted to the jury. The first charge dealt with Stern's release of transcripts of grand jury testimony to the press. The second charge focused on his filing transcripts of grand jury testimony in the public records. The third point concentrated upon Stern's conduct and treatment of a witness who appeared before the grand jury. We overrule appellant's fifth point.

■ In his sixth point, appellant alleges that the charge contained numerous, severe comments on the weight of the evidence. A prohibited comment occurs when a question is so worded that it indicates an opinion by the trial court as to the truth or accuracy of the facts in question. *McDonald Transit, Inc. v. Moore*, 565 S.W.2d 43 (Tex.1978). Appellant also asserts in his seventh point that the jury charge marshalled the evidence in the State's favor. To marshall evidence means to arrange it so as to give credence to one interpretation of evidence over another.

■ We are not faced with evaluating the charge had the truth of the facts contained in it been challenged by Stern. The "facts" recited in all three jury charges are not in dispute. The question is not whether Jack Stern committed those acts, but, whether those acts amounted to incompetence or official misconduct. The trial court did not impermissibly comment directly on the weight of the evidence in the charge to the jury because facts contained in the charge were not in dispute. *Cf., Ingersoll–Rand Co. v. Harrington*, 805 S.W.2d 597, 599–600 (Tex. App.—Beaumont 1991, writ den'd). Moreover, although the charge marshalled the evidence, Stern must show harmful error, e.g. error reasonably calculated to cause and which did cause rendition of an improper judgment, to gain reversal on jury charge error. *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 749–50 (Tex.1980). This Court must consider the entire record, including the parties' pleadings, the evidence, and the entire jury charge, in determining whether harm occurred. *Island Recreation-*

*al Dev. Corp. v. Republic of Texas Savings Ass'n,* 710 S.W.2d 551, 555 (Tex.1986). Alleged error will be deemed reversible only if when viewed in the light of the totality of these circumstances, it amounted to such a denial of the rights of the complaining party as was reasonably calculated and probably did cause the rendition of an improper judgment. *Id.* The jury required specific facts upon which to determine if Stern should be removed from office. The charge of official misconduct was based upon Stern's public disclosure of grand jury testimony. The charge of incompetence was predicated upon both Stern's public disclosure of grand jury testimony and the fact that he questioned a grand jury witness in an "irrelevant, demeaning, and improper manner unrelated to any legitimate investigatory purpose." Thus, viewing the charge in the light of the totality of circumstances, we hold that Stern was not harmed by the marshalling of facts which he admits are true. We overrule appellant's fifth and sixth points of error.

■ In his seventh point of error, appellant alleges that the three questions submitted phases or shades of the same ultimate issue to the jury. The ultimate issues were Jack Stern's alleged incompetence and official misconduct arising from three specifically enumerated acts: (1) releasing transcripts of grand jury testimony to the public via the press, (2) filing transcripts of grand jury testimony in the public records, and (3) harassment of a grand jury witness.

Appellant appears to allege that the jury charge should have addressed incompetence and misconduct as the ultimate issue, and not the three acts which gave rise to the charges. The individual charges addressed each act independently of the other acts because each act alone was sufficient to justify removal. Consequently, we are not prepared to say that the charge submitted phases or shades of the same ultimate issue to the jury. We overrule appellant's seventh point of error.

■ In his eighth, ninth, and tenth points of error appellant complains that the trial court refused to include certain instructions advanced by him. In his eighth point, Stern argues that the court should have included a charge on justification to the jury. That charge read:

A public official does not act unlawfully if he reasonably believes the conduct is required or authorized by law, by the judgment or order of a competent court or other governmental tribunal or in the execution of legal process. A public official is justified if he reasonably believes that the process is lawful, even though the process is unlawful; or his conduct is required or authorized to assist a public servant in the performance of his official duty, even though the servant exceeds his lawful authority.

Stern contends that he reasonably believed his conduct was authorized by law and therefore the defense of justification was vital to his case. He alleges failure to include the requested instruction was harmful and resulted in rendition of an erroneous verdict because the jury charge contained the words "unlawful conduct," e.g. conduct which was *not* justified. Appellant postulates that the jury was precluded from determining his conduct was justified, and hence lawful, because they lacked a proper instruction.

Appellant's argument is without merit. Although the requested instruction sounds convincing, it is fabricated out of section 9.21 of the Penal Code. That section relates to the defense of justification in a criminal proceeding, and has nothing to do with the conduct of an elected public official.

■ In *Lewis v. State,* 773 S.W.2d 716 (Tex.App.—Corpus Christi 1989, writ denied), a justice of the peace was removed for various acts of incompetency and official misconduct. Rejecting the argument that the justice acted honestly and in good faith, the court stated:

These assertions are not defenses to the acts alleged in the State's petition for removal. An act may clearly be done honestly and in good faith, but still be grossly careless or amount to unlawful behavior. Further, there is simply no requirement that a person intentionally and knowingly violate the law. Rather, it is necessary to show that the person intentionally and knowingly engaged in the conduct which constitutes a violation of the law.

*Id.* at 717. Ergo, Stern's argument that he relied upon Article 20.02 of the Code of Criminal Procedure to justify his conduct is unsupportable. In a removal action the relevant inquiry is whether the elected official intentionally and knowingly engaged in conduct which constituted a violation of law, not whether he acted in good faith. Consequently, appellant was not entitled to a jury instruction on justification. We overrule appellant's eighth point of error.

■ In his ninth point of error, appellant argues he was entitled to an instruction to the effect that "[p]ublication of grand jury testimony is not unlawful if the content of that testimony is already known to the public." To support this proposition, Stern relies upon cases dealing with trade secrets and trial testimony, which do not apply here. We do agree that once grand jury testimony is made public, many of the public policy reasons for keeping it secret no longer apply. We do not agree, however, with Stern's argument that by signing the removal petition the grand jurors placed the testimony into the public domain. There is no basis for appellant's argument that he was entitled to the instruction. We overrule appellant's ninth point of error.

■ In his tenth point of error, appellant takes issue with the trial court's failure to include the following instruction:

A public official has a duty to take such lawful action as is necessary to safeguard the public interest and the integrity of public office.

We fail to see the significance of appellant's argument. Clearly, publicly releasing transcripts of grand jury testimony, filing these same transcripts in the county public records, and abusing grand jury witnesses can in no way be considered necessary to safeguard the public interest or integrity of his office. The appropriate method of safeguarding the public interest was to seek indictments against alleged wrongdoers.

Likewise, appellant's argument that he was required to provide copies of exculpatory material to Mrs. Pyka and her attorney falls flat. The Texas Code of Criminal Procedure specifically imposes upon prosecutors a requirement that they not suppress facts or secrete witnesses capable of establishing the innocence of an accused. TEX.CODE CRIM. PROC.ANN. art. 2.01 (Vernon Supp.1993) The United States Supreme Court has similarly ruled that a prosecutor violates due process if he withholds evidence that may tend to exculpate an accused. *Brady v. Maryland,* 373 U.S. 83, 87–88, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963). Assuming that the sheriff's perjured testimony tended to exculpate Lori Pyka, Jack Stern had several options: (1) present that fact to the grand jury and let them consider its exculpatory weight, (2) drop the prosecution of Lori Pyka, (3) seek the indictment of the Sheriff (which he did, and the jury refused to do), or (4) reveal this information to Lori Pyka's attorney in confidence, and thus have a stronger defense if challenged as to the propriety of his release of this information.

Stern released transcripts of grand jury testimony by handing them out to the press. He filed copies of those transcripts in the public records section of the Fort Bend County Clerk's Office. His defense that he was required to divulge this information under *Brady* and/or the Code of Criminal Procedure is a self-serving declaration that cannot justify a patently prohibited course of conduct. We overrule appellant's tenth point of error.

■ Appellant's final three points relate to the admission and exclusion of evidence. In his eleventh point of error, he urges that the trial court erred by allowing expert testimony despite the State's failure to provide resumes and opinions of experts. He relies upon *Farah Mfg. Co., Inc. v. Alvarado,* 830 S.W.2d 911, 914 (Tex.1992), and Rule 215(5) to support his argument. TEX.R.CIV.P. 215(5) (Vernon Supp.1993). *Alvarado* dealt with failure of one party to identify witnesses in response to interrogatories.

■ Rule 215(5) mandates that a party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present that evidence unless the trial court finds that good cause sufficient to require admission exists. TEX.R.CIV.P. 215(5) (Vernon Supp.1992). The sanction is automatic unless good cause is shown. *Stiles*

*v. Royal Ins. Co. of America,* 798 S.W.2d 591, 594 (Tex.App.—Dallas 1990, writ den'd). The Texas Supreme Court has consistently held that "good cause" for purposes of Rule 215(5) is designed to prevent trial by ambush, and not to create a trap for the unwary. *Smith v. Southwest Feed Yards,* 835 S.W.2d 89, 91 (Tex.1992). Good cause allowing testimony of a party witness may exist when the witness' identity is certain and when his or her personal knowledge of relevant facts has been communicated to all other parties. *Henry S. Miller Co. v. Bynum,* 836 S.W.2d 160, 162 (Tex.1992). In determining whether good cause exists, the substance of the entire response must be considered, not just an incomplete reply to a single query. *Smith,* 835 S.W.2d at 91.

We have examined the record. First, we note that the State timely filed responses to interrogatories and disclosed the names, addresses, and areas of expertise of all experts. The identity of each expert was certain. The record also shows that most of the experts designated by the State did not have resumes. It further indicates that this case was on a "fast track," and that there was insufficient time for most of the experts to prepare any reports, or form an opinion before trial. Nonetheless, appellee did designate expert witnesses. After designating some 25 such witnesses, the trial court limited the State to four, who were deposed, and of which only two were permitted to testify.

■ Looking to the substance of the State's response, we hold that there was good cause showing why there were no expert witness resumes or reports. The trial court has discretion in shaping sanctions where good cause is shown. *Smith v. Southwest Feed Yards,* 835 S.W.2d 89, 91 (Tex. 1992). The trial court limited the number of experts the State could rely upon. This action did not prejudice appellant. We hold that the trial court did not abuse its discretion.

■ Stern also argues that the State failed to properly verify its responses to his interrogatories, and that for this reason the testimony of the State's experts should have been excluded. Although Rule 168(5) requires that answers to interrogatories be signed and verified by the person making them, appellant cites no authority for the proposition that failure to timely verify interrogatory answers results in an automatic exclusion of all witnesses. This Court finds no such authority, nor does *Alvarado* hold that witnesses should be excluded because counsel failed to sign the verification.

The record shows that the moment the failure to sign the original verification page was brought to his attention mid-trial, State's counsel filed a sworn verification. State's counsel further explained that he had signed both the transmittal letter and original verification, but that after corrections were made to the interrogatories, and new copies printed, a new verification page was inadvertently printed and forwarded with the documents. The trial judge concluded that, by signing the transmittal, State's counsel intended to comply with the rules, but that he overlooked signing the second verification.

■ We hold that the trial court did not abuse its discretion by permitting the State to rectify the error at trial. We find no way in which Stern was harmed by the court's decision, nor do we see how he was "ambushed" at trial by the State's failure to verify the interrogatories. We decline to apply Rule 215(5) in the draconian manner requested by appellant. Such an application would only encourage attorneys in future lawsuits to ambush inattentive opponents at trial. The purpose of Rule 215(5) is to prevent trial by ambush, not provide a trap for the unwary. *See, Smith,* 835 S.W.2d at 91. Consequently, we overrule appellant's eleventh point of error.

■ In his twelfth point of error appellant alleges that the trial court erred by refusing to admit evidence of Lori Pyka's treatment before the grand jury and her waiver of her right against self-incrimination. Appellant asserts no authority for this proposition, therefore, he has waived the point of error. *Bayliss v. Cernock,* 773 S.W.2d 384 (Tex.App.—Houston [14th Dist.] 1989, writ den'd). Even if appellant had preserved error, it is well established that a party must show a "particularized need" to access or present grand jury testimony as evidence at

trial. *McManus v. State,* 591 S.W.2d 505, 523 (Tex.Crim.App.1979), overruled on other grounds by *Reed v. State,* 744 S.W.2d 112 (Tex.Crim.App.1988). Appellant has not shown a particularized need. We overrule appellant's twelfth point of error.

In his final point of error, appellant claims that he should have been permitted to offer evidence, a newspaper article, that assistant Harris County district attorney Don Smyth once released grand jury testimony to the press. Appellant's argument is simply "two wrongs make right," and is without merit. The trial court properly excluded the evidence. We overrule this point of error as well.

We affirm the judgment.