# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00238-CV

---

**The Attorney General of The State of Texas, Ken Paxton, Appellant**

**v.**

**Mark Gonzalez, District Attorney for the 105th Judicial District, and
the Nueces County District Attorney's Office, Appellees**

---

**FROM THE 261ST DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-21-000130, THE HONORABLE GARY HARGER, JUDGE PRESIDING**

---

## D I S S E N T I N G   O P I N I O N

Information that is made confidential by statute—and thus free from the Public Information Act (PIA)—includes "information collected by the . . . prosecuting attorney during the grand jury selection process about a person who serves as a grand juror." *See* Tex. Code Crim. Proc. art. 19A.104(a); Tex. Gov't Code § 552.101. When a prosecuting attorney collects the names of grand jurors during the selection process, those names are thus information collected by the prosecuting attorney during the selection process about a person who serves as a grand juror. The names are thus confidential under the plain language of subsection (a) of Article 19A.104.

Although the attorney general and majority's arguments quote Subsection (a), they do not apply it. They treat Article 19A.104 as if it instead said:

> (a) Except as provided by Subsection (c), information ~~collected by the court, court personnel, or prosecuting attorney during the grand jury selection process~~ about a person who serves as a grand juror *that* is confidential and may not be disclosed by

the court, court personnel, or prosecuting attorney.~~(b) Information that is confidential under Subsection (a)~~ includes a person's: (1) home address; (2) home telephone number; (3) social security number; (4) driver's license number; and (5) other personal information.

*See* Tex. Code Crim. Proc. art. 19A.104(a)–(b) (struck-through material deleted from statute and italicized word added). If that were the statute, then I would vote with the majority on this topic.

But in the statute as the Legislature wrote it, Subsection (a) is not restricted by Subsection (b). Subsection (a) is expressly restricted only "as provided by Subsection (c)." *See id.* art. 19A.104(a). The Legislature's choice to restrict Subsection (a) only by express mention of Subsection (c) is strong evidence that it intended for Subsection (b) *not* to restrict Subsection (a). *See TotalEnergies E&P USA, Inc. v. MP Gulf of Mex., LLC*, 667 S.W.3d 694, 710 (Tex. 2023) ("[I]n law the expression of one thing often implies the exclusion of other things." (quoting *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845 (6th Cir. 2020))); *Unigard Sec. Ins. Co. v. Schaefer*, 572 S.W.2d 303, 307 (Tex. 1978) ("When specific exclusions or exceptions to a statute are stated by the Legislature, the intent is usually clear that no others shall apply.").

Subsection (b)'s plain language works in harmony with this understanding. Subsection (b) says what the information made confidential by Subsection (a) "includes"—*not* what it excludes. Plus, note how Subsection (a) and Subsection (b) use different terms, suggesting that the Legislature meant something different when using the different terms. Subsection (a) uses "information collected by the prosecuting attorney about a person who serves as a grand juror"—with no use of the adjective "personal"—while Subsection (b) uses "personal information." In all, the plain language of Article 19A.104 requires that the names here be kept confidential.

The attorney general and majority's first workaround for these plain-language problems is the *ejusdem generis* canon of statutory construction. But it gets misapplied. *Ejusdem*

2

*generis* limits the scope of statutory catchall language "to the same class or category as the specific items that precede" the catchall language. *In re Millwork*, 631 S.W.3d 706, 712 (Tex. 2021) (orig. proceeding) (per curiam) (citing *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504 (Tex. 2015)). This structure of specifics-then-a-catchall most often crops up in statutory lists like the one in Subsection (b). For example, "[w]here the more specific items, [a] and [b], are followed by a catchall 'other,' [c], the doctrine of *ejusdem generis* teaches that the latter must be limited to things like the former." *Ross*, 462 S.W.3d at 504. And "[w]hen general words follow specific, enumerated categories, we limit the general words' application to the same kind or class of categories as those expressly mentioned." *City of Houston v. Bates*, 406 S.W.3d 539, 545 (Tex. 2013) (citing *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003)). Note the *ejusdem generis* order: specifics first, then the catchall.[1]

This shows why applying *ejusdem generis* using Subsection (b) cannot restrict Subsection (a) under the mistaken view that Subsection (a) is the catchall language that

---

[1] This is the rule beyond Texas as well:

> The *ejusdem generis* canon applies when a drafter has tacked on a catchall phrase at the end of an enumeration of specifics, as in *dogs, cats, horses, cattle, and other animals*. The principle of *ejusdem generis* . . . implies the addition of *similar* after the word *other*.
>
>  . . . .
>
> In all contexts other than the pattern of specific-to-general, the proper rule to invoke is the broad associated-words canon, not the narrow *ejusdem generis* canon.

Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 199, 205 (2012); *accord Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 223 (2008) (stating that *ejusdem generis* is "the principle that 'when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration'" (quoting *Norfolk & W. Ry. Co. v. American Train Dispatchers Ass'n*, 499 U.S. 117, 129 (1991))).

Subsection (b) restricts. The specifics-then-catchall structure that triggers *ejusdem generis* here is found only within Subsection (b)—its subdivisions (1) through (5). So while I would agree with the attorney general and majority that Article 19A.104(b)(5) "other personal information" does not encompass names, Subsection (b) plus *ejusdem generis* simply does not restrict Subsection (a), which does encompass grand jurors' names when those are collected by the prosecuting attorney during the selection process. And, again, Subsection (a) is expressly restricted only by Subsection (c), not Subsection (b).[2]

The other method deployed here to restrict Subsection (a) to less than what it says is the argument that "looking solely to the plain and common meaning of the words in the phrase 'other personal information' results in an overbroad phrase that borders on being vague and ambiguous and that would encompass nearly every fact about a person, including their name." *See ante* at 7–8. There are at least three problems with this argument. First, it defies the rule that "[i]n the absence of '*clear* statutory language to the contrary,' we presume that when the Legislature chooses broad language, 'the Legislature intended it to have equally broad applicability.'" *See Rogers v. Bagley*, 623 S.W.3d 343, 353 (Tex. 2021) (emphasis added) (quoting *Cadena Comercial USA Corp. v. Texas Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 327 (Tex. 2017)). Second, the majority's analysis still stops short of considering the statute to be vague and ambiguous; the analysis claims only that the statute "borders on being vague and ambiguous." Well, if it isn't ambiguous, then it should be interpreted according to its plain meaning, which here under

---

[2] In fact, the statute's arrangement of Subsection (a) before Subsection (b) suggests that the former is specifically intended to be read unusually broadly: "Following the general term with specifics can serve the function of making doubly sure that the broad (and intended-to-be-broad) general term is taken to include the specifics. . . . [E]ven without those prefatory words [like 'including without limitation'], the enumeration of the specifics can be thought to perform the belt-and-suspenders function." Scalia & Garner, *supra* note 1, at 204.

4

Subsection (a) extends to grand jurors' names. Finally, the statutory phrase "other personal information" is from Subsection (b), not Subsection (a). And nobody has shown why it cannot be the case that the Legislature actually wanted Subsection (a) to "encompass nearly every fact about a person, including their name." Don't we want to keep grand jurors safe as much as possible?

The consequences of the attorney general and majority's position show it to be self-defeating. Their position would keep confidential only grand jurors' home addresses, home telephone numbers, and the like. It would do so presumably out of the same concern for keeping grand jurors safe. But don't we think that all those erstwhile-confidential facts about a grand juror will be quickly discoverable once a bad actor knows the grand juror's name and location within a particular county or similarly small area?[3] Modern methods make virtually all those facts discoverable when starting from just the person's name and location. Subsection (a), because it protects a huge set of information about a grand juror, eliminates this modern-day concern.

Subsection (a) sets the default rule for grand jurors' information—anything collected about them by the prosecuting attorney during selection is confidential.[4] It is no response then to say that their names often will be published during grand-jury organization. For a government officer charged with keeping personal information confidential still bears that responsibility—despite public-information statutes like Texas's PIA—even when the same

---

[3] A PIA requestor will know the grand juror's county or judicial district when the requestor is seeking information from a particular district attorney's office.

[4] This default rule meshes well with Texas's overarching scheme of grand-jury secrecy. *See Harrison v. Vance*, 34 S.W.3d 660, 663 (Tex. App.—Dallas 2000, no pet.) (discussing this secrecy and citing *Stern v. State ex rel. Ansel*, 869 S.W.2d 614, 622 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (collecting authorities)). Maintaining grand-jury secrecy serves goals like "prevent[ing] other persons subject to indictment, or their friends, from importuning the grand jurors." *Stern*, 869 S.W.2d at 621. Therefore, "Texas courts have permitted the veil of grand jury secrecy to be pierced in only a few instances." *Id.* at 622.

5

information might be available in public form otherwise. *See Texas Comptroller of Pub. Accts. v. Attorney Gen.*, 354 S.W.3d 336, 343 (Tex. 2010) (quoting *United States Dep't of Def. v. Federal Lab. Rels. Auth.*, 510 U.S. 487, 500 (1994)).

I thus conclude that the grand jurors' names here are confidential under Article 19A.104(a) and may not be disclosed via the PIA, under its Section 552.101 exception.[5] *See Harrison v. Vance*, 34 S.W.3d 660, 662–63 (Tex. App.—Dallas 2000, no pet.) (reaching same conclusion about PIA request that sought "disclosure of the names of the grand jurors").

My differences with the majority's opinion and judgment do not end there. The majority (1) renders judgment in the attorney general's favor over the district attorney's arguments from the PIA's uses of the term "judiciary" and (2) gives the attorney general the affirmative relief of a judgment declaring "that the information at issue must be disclosed under the PIA," *see ante* at 11. Even setting aside my views about Article 19A.104, I still would not render judgment in the attorney general's favor on the merits. And I would not render an affirmative judgment in his favor declaring anything at all because the pleadings here do not support one.

First, the merits stemming from the PIA's uses of "judiciary." The PIA does not apply to "the judiciary." *See* Tex. Gov't Code §§ 552.002(a)(1), 552.003(1)(B)(i), 552.021. And it does not give access to "information collected, assembled, or maintained by or for the judiciary" because that information is available, if at all, only through other sources. *See id.* § 552.0035(a);

---

[5] The majority rightly acknowledges that *Barnhart v. State* does not support its position. *See generally* No. 13-08-00511-CR, 2010 WL 3420823 (Tex. App.—Corpus Christi–Edinburg Aug. 31, 2010, pet. ref'd) (mem. op., not designated for publication). The court there was not even purporting to analyze the statutory language here. But in another case, one in which the court did analyze Article 19A.104's similarly worded predecessor, the court recognized that the statute kept grand jurors' names confidential. *See In re Jetter*, No. 08-01-00387-CR, 2001 WL 1249259, at *1 (Tex. App.—El Paso Oct. 18, 2001, orig. proceeding) (not designated for publication).

*Abbott v. State Bar of Tex.*, 241 S.W.3d 604, 608–09 (Tex. App.—Austin 2007, pet. denied). Although the district attorney's office is not part of the judiciary, the grand jury is an arm of the judiciary. *Compare Holmes v. Morales*, 924 S.W.2d 920, 923 (Tex. 1996) (district attorneys), *with Harrison*, 34 S.W.3d at 663 (grand juries), *and Euresti v. Valdez*, 769 S.W.2d 575, 577–78 (Tex. App.—Corpus Christi–Edinburg 1989, orig. proceeding) (same). Therefore, if the district attorney's office collected, assembled, or maintained the list of grand jurors' names for a judge or the grand jury, then the names may not be disclosed via the PIA.

The district attorney has raised a fact issue about whether his office collected, assembled, or maintained the list of names for a judge or the grand jury. The record suggests that the district attorney's office gathered the names, compiled a list of the names alongside the grand jurors' mailing addresses and phone numbers, and sent the list to the Nueces County Auditor for "jury processing." (Formatting altered.) The district attorney points out his statutory obligations on behalf of judges or grand juries, arguing that the obligations require his office to gather grand jurors' names. By statute, attorneys for the State must "prepare an order for the court" when a grand juror has become disqualified or unavailable "identifying" the grand juror lost and "naming" one of the alternates. *See* Tex. Code Crim. Proc. art. 19A.252(a)(1), (4). To accomplish these tasks "for the" judge, the attorney necessarily must have "collected" the names of the grand jurors "for the" judge's order. *See* Tex. Gov't Code § 552.0035(a). As for work "for the" grand jury, this case would not be the first to recognize that a "prosecuting attorney is the servant of the grand jury." *See Stern v. State ex rel. Ansel*, 869 S.W.2d 614, 621 (Tex. App.—Houston [14th Dist.] 1994, writ denied). In acting as such a servant, the attorney must help the grand jury determine who is qualified to serve, and the statute governing qualifications requires that grand jurors have "never been convicted of misdemeanor theft or a felony," are "not under indictment or other legal

7

accusation for misdemeanor theft or a felony," and are "not a complainant in any matter to be heard by the grand jury during the term of court for which the person has been selected as a grand juror." *See* Tex. Code Crim. Proc. art. 19A.101(a)(7), (8), (11). Who helps the grand jurors assemble information about these qualifications if not the district attorney's office? That office is the grand jury's "servant," *see Stern*, 869 S.W.2d at 621, for these matters. And how can the office carry out the qualification statute's directives without collecting the grand jurors' names "for the" grand jury?[6] *See* Tex. Gov't Code § 552.0035(a). Still further here, the sending of the list of names to the county auditor for "jury processing" gives rise to the reasonable inference that the district attorney was helping the grand jurors receive some benefit for their service—whether their juror fee, an excuse to hand to their employer for work absences, or something else. That would thus be "maintain[ing]" the list of names "for the" grand jury, *see id.*, as its servant. Whether for this reason or the other statutory ones that the district attorney has identified, there is at least a fact issue about why the district attorney's office collected or maintained this list of grand jurors' names, so rendering judgment for the attorney general is inappropriate.

Nor is the rendition of the affirmative judgment in his favor supported by the pleadings. The district attorney and his office sued the attorney general under the PIA, *see id.* § 552.324, pleading for a declaratory judgment about the list of names. The attorney general answered and filed a jurisdictional plea but filed no other pleadings. The attorney general did not plead any counterclaims.[7]

---

[6] These statutory directives thus supply at least some of the express and implied authority to act as agent that the majority opinion says is lacking.

[7] The majority opinion seems to assert that the attorney general's one-line request from his answer's prayer for a judgment declaring that the information must be disclosed suffices to

8

Because judgments must conform to the pleadings, a party is not entitled to an affirmative judgment in the party's favor on a claim that the party has not pleaded.[8] *See* Tex. R. Civ. P. 301; *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983) ("[A] party may not be granted relief in the absence of pleadings to support that relief."). The part of the attorney general's answer in which he "prays for such other and further relief, both general and special, at law and in equity, to which he may be justly entitled" cannot support an affirmative declaratory judgment in his favor without fair notice that he was pleading an affirmative claim for relief. *See Davidow v. Inwood N. Pro. Grp.—Phase I*, 747 S.W.2d 373, 377 (Tex. 1988). The most that the attorney general could be entitled to here based on the pleadings is a judgment that the district attorney and his office take nothing on their claims. *See Hunt v. Heaton*, 643 S.W.2d 677, 679 (Tex. 1982) (stating that "the correct judgment" to render when plaintiff's claim failed on the merits was "that he take nothing"); *see, e.g.*, *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 456, 460 (Tex. 1997) (reversing and rendering judgment that claimant take nothing on his declaratory-judgment claim in appeal in suit in which the parties had cross-moved for summary judgment on the claim); *Safeco Ins. Co. of Ind. v. Moss*, No. 03-16-00879-CV, 2017 WL 2856750, at *1–2, 5 (Tex. App.—Austin June 29, 2017, pet. denied) (mem. op.) (same); *Charlie Thomas Ford, Inc. v. A.C. Collins Ford, Inc.*, 912 S.W.2d 271, 272–73, 275–76 (Tex. App.—Austin 1995, writ dism'd) (reversing declaratory judgment and rendering judgment that declaratory-judgment

---

plead a declaratory-judgment counterclaim. *See ante* at 3. Even if that one line from the prayer sufficed to plead a counterclaim, there is no showing here that such a counterclaim could survive the district attorney's and his office's governmental immunity from suit.

[8] No one here argues that the parties tried any affirmative claim by the attorney general by consent. The record supports only that the parties tried, via summary-judgment practice, the claims pleaded by the district attorney and his office.

claimant take nothing on that claim).  I thus disagree with the majority's opinion and judgment over rendering a judgment for the attorney general with the affirmative, declaratory relief "that the information at issue must be disclosed under the PIA."

To sum up, the trial court's summary judgment should be affirmed because the grand jurors' names are confidential under Article 19A.104.  Failing that, we should not render judgment for the attorney general because the district attorney has raised a fact issue on his "judiciary"-based arguments from the PIA.  Still further, no affirmative declaratory judgment should be rendered here for the attorney general, who at most could be entitled to a take-nothing judgment.  I therefore respectfully dissent from the majority's opinion and judgment.

_____

Chari L. Kelly, Justice

Before Justices Baker, Kelly, and Theofanis

Filed:   January 11, 2024