**Ex parte Edie Dione MARTIN,**
**Appellant.**

No. 00073-98.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 24, 1999.

Cliff McCormack, San Marcos, for appellant.

Michael S. Wenk, Asst. Dist. Atty., Lockhart, Matthew Paul, State's Atty., Austin, for State.

WOMACK, J., delivered the opinion of the Court, in which MEYERS, PRICE, HOLLAND and JOHNSON joined.

Code of Criminal Procedure Article 32.01 requires the State to indict a defendant by the next term of the grand jury after the one in which the defendant was arrested or show good cause for the failure to do so. The State argues that delay in receiving offense reports from the police department constitutes good cause. Today we adopt a totality-of-circumstances test to determine whether the State has shown good cause.

Officers of the Luling Police Department arrested the appellant for forgery on June 24, 1996. She was released on bail on July 12, 1996. The appellant was not indicted during the grand jury term in which she was arrested, which in the 22 nd

Judicial District Court in Caldwell County was scheduled to begin on the first Monday in June, 1996.[1] She was not indicted during the following term of the same court, which was scheduled to begin on the first Monday of September and to end when the next term began on the first Monday in December.[2]

The appellant filed an application for a writ of habeas corpus on January 21, 1997, seeking to have the case dismissed under former Code of Criminal Procedure articles 32.01[3] and 28.061.[4] The Caldwell County Grand Jury presented an indictment against the appellant on February 5, 1997. The habeas court conducted a hearing on the appellant's application for a writ of habeas corpus on February 20, 1997, at which time the State claimed that it had good cause for failing to indict the appellant by the end of the next term of court after the term in which the appellant was arrested.

To support its claim of good cause, the State produced an affidavit of the senior patrol officer of the Luling Police Department. He stated that the offense reports were not referred to the District Attorney until December 9, 1996, because the police department had little or no clerical help from the summer of 1996 until November, 1996. The habeas court denied relief to the appellant.

In her brief to the Court of Appeals, the appellant claimed that the habeas court erred because a lack of public resources is not justification for unreasonable delay and the District Attorney did not need the police reports in order to seek an indictment from the grand jury. The Third Court of Appeals affirmed the trial court's denial of relief, holding that the standard of review is abuse of discretion and that the habeas court did not abuse its discretion in finding good cause. *Ex parte Martin*, 956 S.W.2d 843, 845 (Tex.App.—Austin 1997). We granted review.[5]

1. According to Government Code section 24.123(c)(1), the terms of the 22nd Judicial District Court in Caldwell County begin on the first Mondays in March, June, September, and December. The district clerk testified that the terms of the court begin on the first or sometimes second Wednesday of March, June, September, and December. Court Reporter's Record at 5. She was not asked and did not say on what days during 1996 the June and September terms actually began. The fact that the appellant was not indicted within the next term of court after her arrest is not in dispute, however.

2. The appellant asserted in her application that the September grand jury term began August 5, 1996.

3. Former article 32.01 read:
When a defendant has been detained in custody or held to bail for his appearance to answer any criminal accusation before the district court, the prosecution, unless otherwise ordered by the court, for good cause shown, supported by affidavit, shall be dismissed and the bail discharged, if indictment or information be not presented against such defendant at the next term of the court which is held after his commitment or admission to bail.
Acts of 1965, 59th Leg., R.S., ch. 722, § 1, 1965 Tex. Gen. Laws 441, *amended by* Act of

May 26, 1997, 75th Leg., R.S., ch. 289, § 2, 1997 Tex. Gen. Laws 1304.

4. Former article 28.061 read:
If a motion to set aside an indictment, information, or complaint for failure to provide a speedy trial is sustained, the court shall discharge the defendant. A discharge under this article or Article 32.01 of this code is a bar to any further prosecution for the offense discharged and for any other offense arising out of the same transaction, other than an offense of a higher grade that the attorney representing the state and prosecuting the offense that was discharged does not have the primary duty to prosecute.
Act of June 16, 1977, 65th Leg., R.S., ch. 787, § 4, 1977 Tex. Gen. Laws 1972, *amended by* Act of June 17, 1987, 70th Leg., R.S., ch. 383, § 1, 1987 Tex. Gen. Laws 1885, *amended by* Act of May 26, 1997, 75th Leg. R.S., ch. 289, § 1, 1997 Tex. Gen. Laws 1304.

5. Although the State argues that article 32.01 is unconstitutional, we do not address this contention because the Court of Appeals did not base its decision on this basis. *See Ex parte Martin*, 956 S.W.2d at 845. The dissent correctly notes that the State failed to raise this issue before the trial court or the Court of Appeals.

## Standard of Review

■ The Third Court of Appeals, relying on its decision in *Ex parte Mallares,* 953 S.W.2d 759, 764–65 (Tex.App.—Austin 1997, no pet.), reviewed the habeas court's decision using an abuse of discretion standard. In *Mallares,* the Court of Appeals relied upon *Dubose v. State,* 915 S.W.2d 493, 497–98 (Tex.Cr.App.1996), for an expression of the abuse of discretion standard of review. When the Court of Appeals decided *Mallares,* it did not have the benefit of our decision in *Guzman v. State,* 955 S.W.2d 85 (Tex.Cr.App.1997). In *Guzman,* this Court expressly overruled *Dubose* and held that an abuse of discretion review of trial court decisions is not necessarily appropriate in the context of the application of law to facts when the decision does not turn on the credibility or demeanor of witnesses. *Id.* at 90. When "the trial judge is not in an appreciably better position than the reviewing court to make that determination," a *de novo* review by the appellate court is appropriate. *Id.* at 87.

■ That is the situation with which we are confronted in this case. The facts are uncontested. The only evidence submitted was an affidavit from the State setting out its reasons for not indicting the appellant within the time required by article 32.01. Under these circumstances, the habeas court is not in an appreciably better position than a reviewing court to determine whether the State has satisfied the good cause requirement of article 32.01. There are no questions of fact; the only issue before the habeas and reviewing courts was whether the facts amounted to good cause. As a result a *de novo* review is appropriate.

## Good Cause

Next we must determine what "good cause" means in this context. The term is not defined in article 32.01. Good cause "generally means a substantial reason amounting in law to a legal excuse for failing to perform an act required by law." *Black's Law Dictionary* 692 (6 th ed.1990).

This Court has addressed a finding of good cause only once during the article's existence. In *Ex parte Lerma,* 167 Tex. Crim. 5, 317 S.W.2d 751 (1958), this Court held that good cause had been shown, though the basis for finding good cause was not discussed in the Court's opinion. *Id.* at 5, 317 S.W.2d at 752. The State offered two reasons for the delay:

> First, the State indicated that the complaint had been filed only six days before the grand jury met and "there was not time for the District Attorney to prepare this and all other cases to be presented to the grand jury." Second, the complaint against Lerma alleged that he had possessed marijuana, but the District Attorney did not receive laboratory confirmation that the substance was in fact marijuana until after the period on which Lerma relied. In addition, the State asserted that the evidence was sufficient for presentation to the grand jury at the next opportunity.

41 George E. Dix and Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 23.78, at 551 (1995) (citing Motion That Prosecution Not be Dismissed, Transcript at 8). *Lerma* dealt with article 32.01's predecessor.[6] The language of the article has changed little since that time.[7]

The courts of appeals have adopted different tests for determining good cause in this context. These courts have taken three paths: (1) determining whether delay was in good faith, (2) adopting the "exceptional circumstance" standard from

---

**6.** Tex.Code Crim. Proc. art. 576 (1856).

**7.** In 1997, the legislature amended article 32.01 to account for the differences in the length of the terms of court. *See* Tex.Code Crim. Proc. art. 32.01.

the old Speedy Trial Act, and (3) considering *Barker v. Wingo*[8] factors.

The Third, Fourth, and Sixth Courts of Appeals have essentially adopted a good faith test. Although other factors are discussed in the opinions dealing with good cause, these courts have found evidence of the State's good faith—or the absence of evidence of bad faith—to be the primary factor.[9] The dissent also argues that the State has met its burden in article 32.01 "when the evidence shows an absence of bad faith delay by the prosecution." *Post,* at 529. "In common usage this term [good faith] is ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation." *Black's Law Dictionary* 693 (6th ed.1990). Good faith is arguably a component of good cause, but good faith is not the equivalent of good cause. If the legislature meant for the State to show good faith to satisfy the article, it could have said so. It certainly

would be easier to look for good faith or the absence of bad faith in preindictment delay, but this is not what the article requires. We think that article 32.01 requires that the State show more than good faith.

The Second, Fifth, and Tenth Courts of Appeals have adopted the analysis of cases dealing with the former Speedy Trial Act.[10] Those courts have used the "exceptional circumstances" test to determine good cause.[11] Under the Act, "exceptional circumstances" justified a reasonable delay.[12] Exceptional circumstances are "conditions which are out of the ordinary course of events; unusual or extraordinary circumstances." *Black's Law Dictionary* 560 (6th ed.1990). If the legislature meant to require that the State show exceptional circumstances, it could have said so as it did in the Speedy Trial Act. The test formerly used with the Speedy Trial Act is not the same as good cause.

**8.** 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

**9.** *See, e.g., Ex parte Byram,* 974 S.W.2d 384, 386 (Tex.App.—San Antonio 1998, no pet.) ("There is no evidence the State's uncontradicted explanation of its reason for delaying the indictment is 'assumed' or an 'imaginary pretense' designed to conceal an intentional effort to unfairly delay the indictment"); *Steinmetz v. State,* 968 S.W.2d 427, 433 (Tex. App.—Texarkana 1998, no pet.) ("There is no evidence that the State deliberately sought to delay the prosecution of this case"); *Mallares,* 953 S.W.2d at 765 ("While it is possible that the [controlled substance] analysis could have been completed in time for action by the May grand jury had there not been a two-month delay in submitting the contraband to the laboratory, and while it is also possible that the grand jury could have been called back to consider indicting appellant before the May term ended, there is no evidence that the State deliberately sought to delay the prosecution of this cause").

**10.** This Court held the Texas Speedy Trial Act, Code of Criminal Procedure article 32A.01–.02, unconstitutional in *Meshell v. State,* 739 S.W.2d 246, 257 (Tex.Crim.App.1987), for violating the separation of powers doctrine of Article II, Section 1 of the Texas Constitution.

In that opinion, this Court concluded that the legislature interfered with prosecutorial discretion to prepare for trial.

**11.** *See, e.g., Frenzel v. State,* 963 S.W.2d 911, 914 (Tex.App.—Waco 1998, pet. ref'd) ("The better approach in determining if the State has presented good cause is to look to cases involving alleged violations of the Speedy Trial Act for guidance"); *Ex parte Barnes,* 959 S.W.2d 313, 317 (Tex.App.—Fort Worth 1997, pet. dism'd) ("Reasons for the delay in indictment similar to the ones the State provided at the writ hearing have been considered and rejected in the context of a defendant's right to a speedy trial. For instance, the court of criminal appeals did not consider a defendant's attempts to informally resolve a related civil action together with the pending criminal case at issue an 'exceptional circumstance' to excuse the delay of trial"); *State v. Condran,* 951 S.W.2d 178, 182 (Tex.App.—Dallas 1997, pet. dism'd) ("Although we have determined a defendant's right to be free from undue preindictment delay differs from his right to a speedy trial, we find caselaw analyzing the statutory exceptions to article 32A.02 (the Speedy Trial Act) instructive").

**12.** *See* TEX.CODE CRIM. PROC. art. 32A.02, § 4(12).

The Fourteenth Court of Appeals uses a test similar to that used to determine whether the constitutional right to a speedy trial has been violated.[13] In *Barker v. Wingo*, the Supreme Court set out a balancing test with four factors to determine when pretrial delay denies an accused of his right to a speedy trial: (1) length of the delay, (2) reason for the delay, (3) prejudice to the accused, and (4) the accused's assertion of the right.[14] Today we adopt a *Barker*-like, totality-of-circumstances test for the determination of good cause under article 32.01. The habeas court should consider, among other things, the length of the delay, the State's reason for delay, whether the delay was due to lack of diligence on the part of the State, and whether the delay caused harm to the accused.

Another relevant inquiry is whether the grand jury has voted not to present an indictment. Ordinarily the requirement of secrecy might prevent the prosecutor from revealing whether the grand jury voted to "no bill" the case. *See* Tex.Code Crim. Proc. art. 20.02. But the Legislature has provided for the disclosure of information pursuant to a court order when a defendant makes a showing of particularized need.[15]

Although the factors that we adopt today and the factors adopted by the Su-

13. *See, e.g., Norton v. State*, 918 S.W.2d 25, 29 (Tex.App.—Houston [14 th Dist.] 1996), *pet. dism'd, improvidently granted*, 969 S.W.2d 3 (Tex.Cr.App.1998) ("This procedural safeguard allows the prosecutor to present factors such as those in *Barker* or otherwise that might justify an untimely indictment")

14. *Barker*, 407 U.S. at 530, 92 S.Ct. 2182.

15. Article 20.02(d) provides:

The defendant may petition a court to order the disclosure of information otherwise made secret by this article or the disclosure of a recording or typewritten transcription under Article 20.012 as a matter preliminary to or in connection with a judicial proceeding. The court may order disclosure of the information, recording, or transcription on a showing by the defendant of particularized need.

Revealing whether the grand jury has "nobilled" the case against the defendant does not implicate most of the reasons for grand jury secrecy. The rationale for grand jury secrecy was described aptly by the Fourteenth Court of Appeals:

The policy reasons for secrecy are compelling. It ensures the utmost freedom to the grand jury in its deliberations. It prevents other persons subject to indictment, or their friends, from importuning the grand jurors; no undue influence should be permitted to sway its counsels or govern its action. Moreover, grand jurors should be free from the apprehension that someone may disclose subsequently their opinions and votes. The requirement of confidentiality also prevents subornation of perjury or tampering with witnesses who may testify before the grand jury and later appear at the trial of those indicted. Further, secrecy encourages free and untrammeled disclosure by persons who have information with respect to the commission of crimes. Witnesses can give evidence without fear of reprisal from an accused or any other person. Confidentiality also protects the innocent accused who is exonerated from disclosure of the fact that he has been under investigation. Such a consideration is particularly important in light of the fact that an elected official's reputation may be irreparably harmed by public disclosure even though the investigation of the allegations reveals no basis for prosecution. It also saves persons who have been cleared by the grand jury from the expense of standing trial where there was no probability of guilt. Additionally the requirement saves the public the trouble, expense, and disgrace of having matters disclosed that no longer have any merit. Finally, grand jury secrecy also prevents the escape of those whose indictment is contemplated.

*Stern v. State ex rel. Ansel*, 869 S.W.2d 614, 621–22 (Tex.App.—Houston [14 th Dist.] 1994, writ denied). Requiring the prosecutor to reveal whether the grand jury "no-billed" the applicant's case would implicate the applicant's interests in grand jury secrecy. Under these circumstances, an accused will be deemed to have waived his interest in grand jury secrecy. The defendant's interest in the secrecy is minimal, since article 32.01 applies only to defendants who have been arrested or bailed. These events are publicly recorded. This disclosure would not reveal which grand jurors voted to indict or which witnesses testified. The State's interest in keeping an ongoing, grand jury investigation secret does not outweigh an accused's right to remove the taint of allegations that are unproven.

preme Court in *Barker* are similar, we adopt this *Barker*-like test because of the similarities in the problem presented: How do courts determine when the right to be discharged in the absence of an indictment or the right to a speedy trial has been violated? The protections are different, but the problem presented is the same; a fact-intensive situation calls for a balancing of the interests served by the rule and the interests of the parties.

By operation article 32.01 prevents citizens from being left in jail or on bail for long periods of time without being indicted. The State must indict within the period set by article 32.01, show good cause for the delay, or suffer the dismissal of the charges. We recognize that at the time of the appellant's arrest, dismissal was a prejudicial bar to the State's bringing the charges at a later time. We also recognize that under the new articles 32.01 and 28.061, relief to the accused is only temporary. But upon dismissal of the charges, the accused repossesses certain liberty interests; he is out of jail and off bail until the grand jury presents an indictment.[16] A fact-based balancing test takes into account interests of both parties.

By adopting this test, we are not adding constitutional, speedy-trial rights to article 32.01. We are adopting a test for a fact-based situation. We must work within the confines of the legislature's words.

The judgment of the Court of Appeals is vacated, and the case is remanded to that court for further proceedings consistent with our decision.

McCORMICK, P.J., filed a dissenting opinion, in which MANSFIELD, KELLER, and KEASLER, JJ., joined.

McCORMICK, P.J., filed dissenting opinion in which MANSFIELD, KELLER and KEASLER, JJ., joined.

I respectfully dissent. The Court vacates the judgment of the Court of Appeals and remands this case there to reconsider the "good cause" issue without addressing the State's primary argument that former Articles 28.061 and 32.01, V.A.C.C.P., are unconstitutional.

Although it does not appear the prosecution raised the constitutionality of these Articles in either the trial court or the Court of Appeals, the Court should nevertheless address the constitutional issue given the unusual history of past cases which have raised this issue and which we have dismissed as improvidently granted. See *Ex parte Norton,* 969 S.W.2d 3, 3–4 (Tex.Cr.App.1998) (Keller, J., dissenting to dismissal of State's discretionary review petition as improvidently granted). The constitutionality of these provisions is an important issue which this Court should settle. See *State v. Condran,* 977 S.W.2d 144, 144–47 (Tex.Cr.App.1998) (Keller, J., dissenting to dismissal of defendant's discretionary review petition as improvidently granted) ("portion of former Article 28.061 that applies to former Article 32.01 is an unconstitutional violation of the Separation of Powers Clause of the Texas Constitution"); *Norton,* 969 S.W.2d at 3 (McCormick, P.J., dissenting to dismissal of State's discretionary review petition as improvidently granted). Having decided not to address the constitutional issue, the Court should for the sake of consistency dismiss this discretionary review petition as improvidently granted.

As to the merits of the "good cause" issue, I would decide "good cause" is shown when the evidence shows an absence of bad faith delay by the prosecution. See *Condran,* 977 S.W.2d at 146 (Keller, J., dissenting). I would decline to engraft onto our state law in Article 32.01 a slightly modified federal constitutional preindictment delay analysis which Article

---

**16.** *See* Tex.Code.Crim. Proc. art. 15.14 ("If a prosecution of a defendant is dismissed under Article 32.01, the defendant may be rearrested for the same criminal conduct alleged in the dismissed prosecution only upon presentation of indictment or information for the offense and the issuance of a capias subsequent to the indictment or information").

32.01 clearly does not contain. See *Condran*, 977 S.W.2d at 146 (Keller, J., dissenting). Article 32.01 requires only a showing of "good cause," and it clearly does not contain the Court's "totality of the circumstances test" calling for an evaluation of "the length of the delay, the State's reason for delay, whether the delay was due to lack of diligence on the part of the State, and whether the delay caused harm to the accused." *Ex parte Martin*, 6 S.W.3d 524, 526 (Tex.Cr.App., handed down this date) (adopting "totality of circumstances test" calling for an evaluation of these factors in assessing "good cause" under Article 32.01); but see *Condran*, 977 S.W.2d at 146 (Keller, J., dissenting) (Article 32.01 does not incorporate "constitutionally relevant factors").

I respectfully dissent.