Becker v. State








COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
 ) No. 08-03-00502-CR
)
EX PARTE: FRANCISCO LOPEZ                   )                             Appeal from
)
) 384th District Court
)
) of El Paso County, Texas
)
) (TC# 20010D02238)

MEMORANDUM OPINION

            Francisco Lopez appeals from an order denying his application for pretrial habeas corpus
relief. We affirm.
FACTUAL SUMMARY
            Sometime in March 1998, eight-year-old Denise Minjares told her mother, Sandra Olivas,
that her stepfather, Appellant, had gone into her bedroom the previous evening and had touched her
with something wet that felt like a knee. She also said that he was shaking it. She could not explain
more because she did not understand what had happened. Olivas did not press her for additional
details and she did not call the police or Child Protective Services. 
            In the fall of 2000, Denise moved to the home of her father and stepmother, Roberta
Minjares. Shortly after she began living with them, Roberta talked to Denise about good touches
and bad touches. Roberta did not have any knowledge of the prior conversation between Denise and
Olivas but instead talked to Denise about this subject because she believed parents should make their
children aware of the difference between good touches and bad touches. During the conversation,
Denise told Roberta that when she woke up one night, Appellant’s “ding-a-ling” or penis was in her
hands. His hands were clasped around hers and he was moving their hands back and forth. Roberta
asked Denise whether she had spoken with anyone about it. She replied that she had spoken with
both Appellant and Olivas but they told her not to tell anyone because Olivas was afraid that Denise
would be taken away from her.
            Maria Lucy Herrera, who is employed by Child Protective Services, investigated the
allegation. Based upon her investigation, Herrera concluded that there was reason to believe that
sexual abuse had occurred. She sent a letter to Denise’s father stating that conclusion. 
Subsequently, CPS erroneously sent a second letter stating that CPS had been unable to determine
whether sexual abuse had occurred. 
            On May 15, 2001, a grand jury indicted Appellant for indecency with a child by sexual
contact. The State provided Appellant’s counsel with documents pertaining to the CPS
investigation, including both letters, but he did not interview Herrera until after trial began. Herrera
explained to counsel that the second letter was a clerical error and should not have been sent. 
Appellant first moved for a continuance on the ground that he needed to prepare a defense based on
this new information because he had believed that the second letter was intended to correct the first
one. He asserted that the “clerical error” was Brady


 material which had not been made known to
him. The prosecutor vigorously asserted that a Brady violation had not occurred but she agreed to
a short continuance of the trial in order that Appellant could investigate and prepare a defense based
on the information about the second letter. When the trial court denied his request for a one week
continuance, Appellant moved for a mistrial in order to have an opportunity to prepare a defense
based on the information provided by Herrera. The trial court granted the motion for mistrial over
the State’s objection. 
            On the day before the re-trial was scheduled to begin, Appellant filed a pretrial writ of habeas
corpus based on double jeopardy. Following a hearing, the trial court denied the requested relief. 
Appellant immediately filed a notice of appeal. 
STANDARD OF REVIEW
            In reviewing a trial judge’s decision to grant or deny relief on a writ of habeas corpus, we
afford almost total deference to a trial judge’s determination of the historical facts supported by the
record, especially when the fact findings are based on an evaluation of credibility and demeanor. See
Ex parte Martin, 6 S.W.3d 524, 526 (Tex.Crim.App. 1999); State v. Nkwocha, 31 S.W.3d 817, 820
(Tex.App.--Dallas 2000, no pet.). We afford the same amount of deference to the trial judge’s
rulings on “applications of law to fact questions,” if the resolution of those ultimate questions turns
on an evaluation of credibility and demeanor. Nkwocha, 31 S.W.3d at 820. However, if the
resolution of those ultimate questions turns on an application of legal standards, we review the
determination de novo. Id.
DOUBLE JEOPARDY
            In his sole issue on appeal, Appellant contends that the trial court erred by denying habeas
corpus relief. The Double Jeopardy Clause of Article 1, Section 14 of the Texas Constitution
protects a criminal defendant from repeated prosecutions for the same offense. Ex parte Peterson,
117 S.W.3d 804, 810 (Tex.Crim.App. 2003). Although a defendant has a valued right to have his
trial completed by a particular tribunal, the double jeopardy provision does not guarantee that the
State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding.
Id. Thus, double jeopardy principles do not forbid multiple trials of a single criminal charge if the
first trial resulted in a mistrial that: (1) was justified under the manifest necessity doctrine; or (2) was
requested or consented to by the defense, absent prosecutorial misconduct which forced the mistrial. 
Id. at 810-11. A mistrial which the defense freely chooses does not bar retrial. Id. at 811. On the
other hand, a mistrial that the defense is compelled to request because of manifestly improper
prosecutorial conduct may, under certain circumstances, bar retrial. Id. The Texas double jeopardy
provision bars a retrial only when the defendant is required to move for a mistrial because the
prosecutor deliberately or recklessly crossed the line between legitimate adversarial gamesmanship
and manifestly improper methods that rendered trial before the jury unfair to such a degree that no
judicial admonishment could have cured it. Id. at 816, citing State v. Lee, 15 S.W.3d 921, 923
(Tex.Crim.App. 2000).
            In analyzing a double jeopardy mistrial claim, we engage in the following three-part analysis: 
1) Did manifestly improper prosecutorial misconduct provoke the mistrial?
2) Was the mistrial required because the prejudice produced from that misconduct
could not be cured by an instruction to disregard? 
 
3) Did the prosecutor engage in that conduct with the intent to goad the defendant
into requesting a mistrial or with conscious disregard for a substantial risk that the
trial court would be required to declare a mistrial?

Id. at 816-18.
Manifestly Improper Prosecutorial Misconduct
            Under the first part of the test, prosecutorial misconduct reasonably reaches only that conduct
which is qualitatively more serious than simple error and connotes an intentional flouting of known
rules or laws. Id. at 816 n. 55. If the prosecutor’s conduct, viewed objectively, was not “manifestly
improper,” then the double jeopardy inquiry ends at this first stage. Id. If, for example, the law itself
is unsettled or the application of the law in the particular situation is debatable, the prosecutor's
conduct cannot be said to be manifestly improper. Id.
            It is undisputed that the prosecutor made available to Appellant’s counsel all of the CPS
records at issue and did so well prior to trial. According to the discussions had in the trial court,
there is an apparent conflict between the reports and the first letter showing Herrera had concluded
there was reason to believe sexual abuse had occurred and the second letter stating that CPS was
unable to conclude that abuse had occurred. Rather than seeing the documents as conflicting and
perhaps requiring further investigation, counsel assumed that the second letter was intended to
correct the first one. It was only when Appellant’s counsel interviewed Herrera on the day of trial
that he learned that his assumption was erroneous. Appellant now argues that it was the prosecutor’s
duty to make him aware that the second letter was a clerical error because it constitutes impeachment
material. We disagree. The documentary evidence provided to Appellant prior to trial contains
conflicting conclusions which could have been used by him to challenge Herrera’s credibility. Her
explanation that the second letter was a clerical error is not at all exculpatory nor is it impeachment
material.


 To the contrary, it is inculpatory. Thus, the State did not have an obligation under Brady
to make Appellant aware of the clerical error. See Rivera v. State, 808 S.W.2d 80, 95
(Tex.Crim.App. 1991)(the prosecution has no general duty to disclose inculpatory evidence).
            Even if it could be said that the State had a duty to disclose the clerical error, the State’s
failure to do so is not manifestly improper and is not the type of error that equates to incurably
prejudicial misconduct. Consequently, we conclude that Appellant’s re-trial is not barred by double 
jeopardy. The sole issue on appeal is overruled and the trial court’s order denying habeas corpus
relief is affirmed.


October 28, 2004                                                         
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Panel No. 2
Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)