NUMBER 13-07-144-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


EX PARTE: JAMES CARL CAMP 
 

 


On appeal from the County Court at Law of 


San Patricio County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Vela


Memorandum Opinion by Justice Yañez


 

 After a bench trial, appellant, James Carl Camp, was convicted of assault. (1) 
Appellant was given a one-year term of imprisonment, probated for one year, and an $800
fine. Appellant thereafter filed an application for a writ of habeas corpus, alleging there
was new evidence that "undermine[d] the guilty verdict and subsequent Judgment." After
a hearing, the trial court entered an order denying appellant's application. In a single issue,
appellant challenges the denial of his application for writ of habeas corpus. We affirm.

Background

1. Appellant's Trial for Assault

 The trial judge who denied appellant's writ also presided over his trial for assault. 
The victim of the assault was appellant's wife (hereinafter "J.C."). At trial, J.C.'s testimony
provided the following facts: (1) on February 2, 2005, J.C. and appellant were arguing at
their residence; (2) during this argument, appellant spit in J.C.'s face and she, in turn, spit
in his face; (3) when J.C. spit, appellant struck her nose with the palm of his right hand,
causing her to have a "bloody nose and a busted lip"; (4) J.C. called 911 a few minutes
later; and (5) appellant left the residence prior to the arrival of law enforcement.

 Three police officers from the Portland Police Department also testified. According
to their testimony, they arrived at the Camps' residence, where they found J.C. in an
emotional state, with injuries to her face as described by her testimony. One officer
testified that after visiting the Camps' residence, he returned to the police station where he
found appellant sitting inside. According to the officer: "When I walked in I asked him if
he was Mr. Camp. He said yes. He stood up, said he knew he was in trouble. Then he
actually turned around and put his hands behind his back." Appellant was taken into
custody at that time.

 Appellant testified that his hand accidentally contacted J.C.'s nose as he attempted
to block her spit.

2. Appellant's Habeas Corpus Hearing

 At the habeas corpus hearing, appellant submitted a letter that J.C. had sent to the
trial judge. The letter stated:

 In the matter of alleged domestic violence assault charges filed on James
Carl Camp. The events that took place that evening were exaggerated. 
During our 6 1/2 year marriage there was never any violence and I know that
without a doubt Jim would never hurt me and did not mean to that evening. 
We were in middle [sic] of a messy divorce proceeding and a custody fight
for our children. I do not feel in any way threatened by Jim or feel that my
children are in harms way. Please reconsider your verdict and the [sic] do
not convict James C. Camp on this matter.


J.C. testified at the hearing. She denied, contrary to the claims of appellant's counsel, that
the letter represented a recantation of the testimony she provided at appellant's trial for
assault. J.C. stated that the purpose of the letter was to inform the trial judge that
appellant had never physically harmed her prior to the incident in question; it was not her
intent to give the impression that she definitively knew that appellant did not mean to strike
her. J.C. further testified that she believes appellant's conviction should stand, and that
she only wrote the letter because she stood to gain an additional $300 a month from
appellant in child support if his conviction was dismissed or he was acquitted.

Standard of Review

 The court of criminal appeals set out the applicable standard of review in great detail
in Ex parte Brown:

 This Court now recognizes two types of "innocence" claims. The
first--a Herrera claim--is a substantive claim in which the person asserts a
"bare claim of innocence" based solely on newly discovered evidence. The
other type of innocence claim--a Schlup claim--is one that "does not by
itself provide a basis for relief," but is intertwined with constitutional error that
renders a person's conviction constitutionally invalid.

 

 Establishing a bare claim of actual innocence is a Herculean task. 
We have stated that "any person who has once been finally convicted in a
fair trial should not be permitted to wage, and we do not permit him to wage,
a collateral attack on that conviction without making an exceedingly
persuasive case that he is actually innocent." Thus, to succeed in an actual
innocence claim the applicant must show "by clear and convincing evidence
that, despite the evidence of guilt that supports the conviction, no reasonable
juror could have found the applicant guilty in light of the new evidence." This
showing must overcome the presumption that the conviction is valid and it
must unquestionably establish applicant's innocence.


 . . . .


 . . . [B]efore a habeas applicant is entitled to a hearing, the applicant
must make a claim that, if true, establishes affirmative evidence of his
innocence. Then, at the hearing, the trial judge assesses the witnesses'
credibility, examines the "newly discovered evidence," and determines
whether that "new" evidence, when balanced against the "old" inculpatory
evidence, unquestionably establishes the applicant's innocence. The
habeas judge then sets out findings of fact and conclusions of law, and he
makes a recommendation to this Court. Upon submission to this Court, we
review the factual findings with deference because the habeas judge is in the
best position to make credibility judgments. Even though deference is the
prescribed standard, we are not bound by the habeas judge's findings,
conclusions, or recommendations when they are not supported by the
record. (2)


Discussion

 On appeal, appellant relies on the court of criminal appeals' opinion in Ex parte
Elizondo (3) in raising the following argument:

 Elizondo was convicted based solely on the testimony of one witness, and
when that witness recanted, the Court of Criminal Appeals ordered habeas
relief granted. Similarly, Camp was convicted based solely upon the
testimony of [J.C.], who thereafter recanted. Elizondo states that the newly
discovered evidence should create doubt as to the efficacy of the verdict
sufficient to undermine confidence in the verdict, and that it is probable that
the verdict would be different on retrial. Appellant submits that this standard
was met at his Writ hearing.

 

 Despite [J.C.'s] recantation of her recantation, the newly discovered
evidence clearly creates doubt as to the efficacy of the verdict in [appellant's]
case. . . . Having now admitted lying during trial, and then later lying to the
Judge, [J.C.] has no credibility. . . . It is probable that upon retrial by jury,
[appellant] would be found innocent.


 The defendant in Elizondo was convicted for aggravated sexual assault "based
solely upon the testimony of his step-son Robert." (4) Thirteen years after the conviction,
Robert recanted, stating that his "natural father relentlessly manipulated and threatened
[him] into making such allegations against [the defendant] in order to retaliate against [his]
natural mother, [the natural father's] ex-wife, for marrying [the defendant] years before." (5) 
In concluding that the defendant was entitled to habeas corpus relief, the court of criminal
appeals stated:

 [Robert's] claim is not implausible on its face, and particularly given the
complete lack of any other inculpatory evidence in the case, direct or
circumstantial, we think that another jury hearing the evidence, including the
newly discovered mature recantation of Robert's juvenile testimony, would
view the new evidence as the more credible and would acquit applicant. (6)


 Assuming, arguendo, that the letter written by J.C. is a recantation of the testimony
she provided at appellant's trial for assault, her abandonment of this recantation adds to
the number of significant distinctions that can be drawn between this case and Elizondo. 
In Monse v. State, this Court stated:

 [T]he general rule is that a new trial should be granted where a witness has
testified to material inculpatory facts against the accused and after the
verdict, but before the motion for new trial has been acted upon, makes an
affidavit that he testified falsely. There are exceptions to the general rule
where, among other things, the recanting witness is an accomplice or
abandons the recantation, where the recantation is found not to be credible
in light of the trial evidence, or where evidence is produced at the new trial
hearing to show that the recantation is incredible or pressured. (7)


Accordingly, just as a trial court may take into account the abandonment of a recantation
in deciding whether to grant a new trial based on that recantation, we believe a trial court
may similarly consider a recantation's abandonment in deciding whether to grant a writ of
habeas corpus.

 Furthermore, the court of criminal appeals explained in Elizondo that because the
victim was recanting, as an adult, testimony that he provided years earlier as a juvenile, a
basis existed for the fact-finder to conclude that the recantation was more credible than the
previous testimony. (8) In the instant case, there is no basis for finding J.C.'s alleged
recantation more credible, considering that J.C. testified that her letter to the trial court was
strictly motivated by a desire to obtain a higher amount of needed child support payments. 
We thus find that Elizondo does not support appellant's contention that the trial court erred
in denying his application for writ of habeas corpus. (9)

 At the conclusion of J.C.'s testimony at the habeas corpus hearing, the trial judge
stated: "I remember the hearing [on appellant's assault charge]. [The defendant] also
testified and I didn't believe his version of the events. I am denying your Motion for Writ
of Habeas Corpus. This has come up several times. I remember the hearing. I didn't
believe [the defendant]. I believed [J.C.]." This statement is significant because we must
afford almost total deference to a trial judge's determination of the historical facts
supported by the record, especially when the fact findings are based on an evaluation of
credibility and demeanor. The trial judge was similarly free to make findings based on his
evaluations of J.C.'s credibility and demeanor at the habeas corpus hearing. (10)

 Regardless of whether the trial judge concluded that J.C.'s letter was not a
recantation, or concluded that it was a recantation that deserved little or no weight in light
of its subsequent abandonment and other surrounding circumstances, we believe due
deference should be given to either conclusion. Accordingly, we conclude that the trial
court did not err because the habeas record does not show that appellant's evidence
unquestionably establishes his innocence.

Conclusion

 We affirm the trial court's order.


 

 LINDA REYNA YAÑEZ,

 Justice




Do not publish. Tex. R. App. P. 47.2(b).


Memorandum opinion delivered and 

filed this the 22nd day of May, 2008.
1. See Tex. Penal Code Ann. § 22.01(a)(1) (Vernon 2003).
2. Ex parte Brown, 205 S.W.3d 538, 544-46 (Tex. Crim. App. 2006) (footnotes omitted).
3. Ex parte Elizondo, 947 S.W.2d 202 (Tex. Crim. App. 1996).
4. Id. at 209.
5. Id. at 210.
6. Id.
7. Monse v. State, 990 S.W.2d 315, 318 (Tex. App.-Corpus Christi 1999, pet. ref'd) (emphasis added
and citations omitted). We also stated the same in Villarreal v. State, 788 S.W.2d 672, 673-74 (Tex.
App.-Corpus Christi 1990, pet. ref'd).
8. Ex parte Elizondo, 947 S.W.2d at 210.
9. Though appellant would have us believe that Elizondo signifies that an application for writ of habeas
corpus must be granted in the face of a victim's recantation, the court of criminal appeals' holding in Ex parte
Brown clearly disproves this notion. In that case, the court overturned the trial court's decision to grant habeas
relief based on the victim's recantation, which was not abandoned. Ex parte Brown, 205 S.W.3d at 546-49. 
The court concluded that "the habeas record [did] not show that applicant's evidence . . . unquestionably
establishe[d] his innocence." Id. at 549.
10. See Ex parte Martin, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999).