

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00135-CR

EX PARTE JORGE LUIS TAMAYO

----------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
TRIAL COURT NO. C-3-010919-1431372-AP

----------

## MEMORANDUM OPINION[1]

----------

Appellant Jorge Luis Tamayo appeals the habeas court's denial of his application for a writ of habeas corpus under article 11.072 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 11.072 (West 2015). In three issues, Tamayo contends that: (1) his deportation to Mexico, which occurred after he filed his application but prior to this appeal, does not render the

---

[1]*See* Tex. R. App. P. 47.4.

appeal moot;[2] (2) the habeas court abused its discretion when it denied his application because the evidence shows that his guilty plea was not made voluntarily, knowingly, or intelligently; and (3) the habeas court erred when it denied his application without first holding a full evidentiary hearing. Because we conclude that Tamayo's appeal is not moot and the habeas court did not err when it denied his application, we affirm.

## I. BACKGROUND

Tamayo is a citizen of Mexico, but he began living in the United States when he was a young child. In 2015, when he was nineteen years old, a grand jury indicted him with possession of less than one gram of methamphetamine. *See* Tex. Health & Safety Code Ann. § 481.102(6) (West Supp. 2017), § 481.115(a)–(b) (West 2017). With the assistance of his attorney, Y. Leticia Sánchez Vigil, Tamayo entered into a plea bargain. Tamayo pled guilty in exchange for deferred adjudication, his placement on community supervision for two years, and a $200 fine. Tamayo's plea paperwork stated in part, "If you are not a citizen of the United States of America, a plea of guilty or nolo contendere for this offense may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law."

Shortly after Tamayo's plea, the United States Department of Homeland Security, Immigration and Customs Enforcement detained him and initiated

---

[2]Tamayo presents this issue upon our request.

2

deportation proceedings against him.[3] He then filed an application for writ of habeas corpus to challenge his custody on the basis of ineffective assistance of counsel. In the application, Tamayo contended that Attorney Vigil had advised him that his plea bargain would "allow him to remain free while on deferred probation, and after successfully completing probation, he could obtain an order of non-disclosure in exchange for pleading guilty." He contended that Vigil had not informed him that "by agreeing to plead guilty to a drug crime, he was actually making a decision that would . . . force him to be . . . deported *without any chance at relief*."

Thus, Tamayo contended that he had pled guilty under Attorney Vigil's erroneous and incomplete advice and had received ineffective assistance of counsel. He asserted that had he known of the immigration consequences of his guilty plea, he would have made a different decision. He asked the habeas court to set aside the deferred adjudication order.

To his habeas application, Tamayo attached a letter to his habeas counsel from Attorney Vigil. In the letter, Vigil stated in part,

> I remember Mr. Tamayo very well . . . .
>
> *Yes, I explained the immigration consequences since day one.* I do that on all my interviews, as almost 90% of my clients are not

---

[3]A guilty plea for possession of a controlled substance in exchange for deferred adjudication community supervision is a "conviction" for purposes of federal immigration law. *State v. Guerrero*, 400 S.W.3d 576, 588 (Tex. Crim. App. 2013).

3

citizens. I remember how upset his mother got when I told him that the offense was one he could be deported on. . . . I repeated myself numerous times and asked him if he understood and he stated he did.

Also, before we enter[ed] any plea I went over the plea papers with him and again, I discuss[ed] the immigration consequences with him before he initial[ed] the form. *He and his mother were both very aware of the consequences.*

. . . .

I am sorry that immigration wants to deport him, but he was more than aware, as was his mother, of the consequences. [Emphasis added.]

Tamayo also attached his own handwritten statement. In the statement, he provided, among other facts, that he had understood that if he pled guilty, he would not face immediate deportation but might be deported "at some point in the future." He also stated, "Before pleading guilty, Attorney Vigil showed me some court papers that said there was a chance I might be deported[,] but I did not realize that meant unavoidable deportation without the ability to return to the U.S."

Later, Attorney Vigil submitted an affidavit to the habeas court. In the affidavit, she stated in part,

On October 22, 2015 [Tamayo] retained my services. . . . On October 29, 2015 he and his mother came to my office to go over his case file. I told them that because he was illegal he would not be eligible for [p]robation. He would get a jail sentence. *I told them that the drug case would definitely make him ineligible for any immigration benefits. I told him the drug case was a permanent bar from admission.* I also told him he would be deported [if] he got detained by immigration simply because he was illegal in this country. His mother was upset about this. He just seemed like he

4

didn't understand and I explained it again several times until he said he understood. Finally, as before, I admonished him not to get any[] more cases, because the Judge could hold his bond insufficient and a warrant for his arrest would issue. Once arrested he would have to remain in jail until we disposed of all his cases. After that he would be turned over . . . for deportation proceedings.

. . . .

. . . On January 13, 2016 he and his mother were again in my office to review his case. At this time, I told them if he went to jail for anything [immigration authorities] would put a hold on him. He would immediately be placed on [d]eportation [p]roceedings, regardless of [whether] he had any criminal convictions. His mother asked I do whatever I could to keep him out of jail.

. . . On January 19, 2016 we went to court and were extended a 3 years [d]eferred [a]djudication offer. I explained the offer to him. He would plead guilty but not [be] found guilty. I explained that if the Judge asked and he told him he was illegal, he would not let him get a probation offer. *I explained that if he got probation, the probation officer could report him to [immigration authorities] at any time and he would be deported.*

. . . .

. . . On July 12, 2016 I went over the plea papers with him and again explained if the Judge found out he was illegal he would not accept the plea. *I also reminded him that the probation officer could report him to [immigration authorities] at any time and he would be deported. Knowing all this he still accepted probation on the drug case.*

. . . .

. . . *On the two plea dates I again went over his immigration consequences before he signed any of the plea papers. He understood perfectly, he would be deported if immigration got a hold of him.* Besides, the two Judges admonished him on the immigration consequences. He assured the Judges that he understood and still wanted to proceed with the disposition of his cases. [Emphasis added.]

5

The State filed a response to the habeas application. Tamayo filed a reply to the response and asked the habeas court to hold an evidentiary hearing. He also supplemented his application by arguing that he was actually innocent of the drug offense; he claimed that the drug that led to his guilty plea "actually belonged to a . . . [person] named Areeba."

The habeas court adopted the State's proposed findings of fact and conclusions of law and denied Tamayo's application without a hearing. Among other conclusions, the habeas court concluded that Attorney Vigil's affidavit was credible and that she correctly admonished Tamayo about the deportation consequences of his plea. Sometime after Tamayo submitted his application, he was deported to Mexico. This appeal followed.

## II. DISCUSSION

### A. Tamayo's Deportation Does Not Moot this Appeal.

On our request, in his first issue, Tamayo discusses whether his deportation renders this appeal moot. Tamayo filed his article 11.072 application for a writ of habeas corpus while in physical custody of the Department of Homeland Security, and he was later deported. *See* Tex. Code Crim. Proc. Ann. art. 11.072, § 2(b) (describing the circumstances in which an applicant may seek habeas corpus relief from an order imposing community supervision). We asked both parties to address the issue of whether the deportation rendered this appeal moot. Tamayo and the State responded that the appeal is not moot because the

6

outcome of this appeal could affect Tamayo's ability to return to the United States. We agree.

An issue becomes moot when we cannot grant effectual relief. *Chacon v. State*, 745 S.W.2d 377, 378 (Tex. Crim. App. 1988); *see also Knox v. Serv. Emps. Intern. Union, Local 1000*, 567 U.S. 298, 307, 132 S. Ct. 2277, 2287 (2012) (explaining that a case becomes moot only when it is impossible for a court to grant any effectual relief to the prevailing party). We must dismiss an appeal that is moot because such an appeal is not justiciable. *Pharris v. State*, 165 S.W.3d 681, 687 (Tex. Crim. App. 2005); *Roberts v. State*, 508 S.W.3d 310, 311 (Tex. App.—Fort Worth 2013, no pet.).

Habeas corpus is available to applicants who are "restrained in [their] liberty." Tex. Code Crim. Proc. Ann. art. 11.01 (West 2015). A potential collateral consequence from a criminal judgment may "restrain" an applicant's liberty such that habeas corpus relief is available. *See Ex parte Harrington*, 310 S.W.3d 452, 454, 457–58 (Tex. Crim. App. 2010); *see also Ex parte Glass*, 203 S.W.3d 856, 857 (Tex. Crim. App. 2006) (recognizing that collateral consequences may prevent an article 11.072 writ application from becoming moot).

To argue that Tamayo's deportation does not render this appeal moot, the State relies on *Cuellar v. State*, 13 S.W.3d 449, 451 (Tex. App.—Corpus Christi 2000, no pet.). There, the State argued that Cuellar's deportation, which followed his conviction for a drug offense, rendered his appeal from the

7

conviction moot. *Id.* at 450–51. The Corpus Christi court disagreed. *Id.* at 451. The court reasoned that the appeal was not moot because Cuellar's conviction prevented him from "reentering the United States or obtaining a visa." *Id.* at 451 (citing 8 U.S.C. § 1182(a)(2)(A)(i)(II) (West 2005)). The court held that an appellant who complies with the rules of appellate procedure should "not lose his right to appeal when he is expelled from the country and is legally unable to return to the custody of the State, particularly when the conviction affects his right to reenter the country at a later date." *Id.* at 452.

We agree with the holding and reasoning in *Cuellar*. *See id.* Tamayo's deportation and his inability to reenter this country are collateral consequences of his guilty plea. *See State v. Jimenez*, 987 S.W.2d 886, 888–89 (Tex. Crim. App. 1999); *see also Ex parte Okonkwo*, No. 14-14-00835-CR, 2015 WL 5092433, at *3 (Tex. App.—Houston [14th Dist.] Aug. 27, 2015, pet. ref'd) (mem. op., not designated for publication) ("Because potential deportation is a collateral consequence, applicant is confined or under restraint for habeas-corpus purposes and may seek habeas-corpus relief even though he is no longer subject to community supervision."); *Ex parte Carpio-Cruz*, No. 08-10-00240-CR, 2014 WL 5316988, at *2 (Tex. App.—El Paso Oct. 17, 2014, no pet.) (op. on remand, not designated for publication) ("Immigration consequences, including deportation[,] have traditionally been considered collateral consequences of a guilty plea."). Because a decision in Tamayo's favor in this appeal could impact his ability to reenter the United States, we agree with the parties that his appeal

8

from the denial of habeas corpus relief is not moot. *See Okonkwo*, 2015 WL 5092433, at \*3; *Cuellar*, 13 S.W.3d at 451–52; *see also United States v. Chang Hong*, 671 F.3d 1147, 1149 n.3 (10th Cir. 2011) (holding that an appeal from the denial of habeas relief related to a drug conviction was not moot upon the defendant's deportation because the conviction rendered the defendant "ineligible to receive a visa or for admission to the United States"). We therefore address Tamayo's second and third issues on their merits.

## B. The Habeas Court Did Not Err by Denying Tamayo's Request for Habeas Relief.

In his second and third issues, Tamayo contends, respectively, that the habeas court erred by denying relief because (1) his guilty plea was not voluntarily, knowingly, and intelligently made since Vigil did not advise him of immigration consequences; and (2) the habeas court did not hold an evidentiary hearing on the application.

### 1. The Standard of Review for a Habeas Corpus Ruling Depends on Whether the Ruling Turns on the Evidence or the Law.

We ordinarily review a habeas court's decision on whether to grant an article 11.072 writ of habeas corpus for an abuse of discretion. *See Ex parte Mello*, 355 S.W.3d 827, 832 (Tex. App.—Fort Worth 2011, pet. ref'd). "We review the evidence in the light most favorable to the habeas court's ruling" and "afford great deference to the habeas court's findings of facts and conclusions of law that are supported by the record." *Id.* This deferential review applies even

9

when the findings are based on affidavits rather than live testimony. *Id.*; *see Ex parte Wheeler*, 203 S.W.3d 317, 325–26 (Tex. Crim. App. 2006).

However, "an abuse of discretion review . . . is not necessarily appropriate in the context of the application of law to facts when the decision does not turn on the credibility or demeanor of witnesses." *Ex parte Martin*, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999). Instead, when a trial judge is not in an appreciably better position than the reviewing court to determine the matter, a de novo review by the appellate court is appropriate. *Id.*; *see Mello*, 355 S.W.3d at 832 ("If the resolution of the ultimate question turns on an application of legal standards, we review the determination de novo.").

### 2. The Habeas Court Did Not Abuse Its Discretion in Finding that Tamayo's Guilty Plea was Made Voluntarily and Knowingly.

In his second issue, Tamayo contends that the habeas court erred by denying his application for a writ of habeas corpus because he did not make his guilty plea voluntarily, knowingly, or intelligently. Specifically, he asserts that Attorney Vigil rendered ineffective assistance by failing to admonish him about the "extreme consequences resulting from his guilty plea." The State responds that Tamayo failed to prove by a preponderance of the evidence that his plea was involuntary in light of the habeas court's finding that Vigil's affidavit, wherein she testified that she properly advised Tamayo regarding the immigration consequences, was credible. Because that court was in the best position to make credibility determinations concerning the written witness statements

10

(including Attorney Vigil's affidavit), we review this issue under an abuse of discretion standard. *See Mello*, 355 S.W.3d at 832.

A defendant is entitled to effective assistance of counsel when entering a guilty plea. *Ex parte Uribe*, 516 S.W.3d 658, 665 (Tex. App.—Fort Worth 2017, pet. ref'd). To demonstrate that he is entitled to postconviction relief because of ineffective assistance of counsel, Tamayo must demonstrate that: (1) Attorney Vigil's performance was deficient, in that it fell below an objective standard of reasonableness; and (2) he was prejudiced as a result of her errors. *See id.* at 666. An attorney satisfies the range of competence demanded of attorneys when she correctly advises a defendant of clear deportation consequences associated with a guilty plea. *See Padilla v. Kentucky*, 559 U.S. 356, 369, 130 S. Ct. 1473, 1483 (2010); *Ex parte Aguilar*, No. WR-82,014-01, 2017 WL 4168632, at *2 (Tex. Crim. App. Sept. 20, 2017); *cf.* Tex. Code Crim. Proc. Ann. art. 26.13(a)(4) (West Supp. 2017) ("Prior to accepting a plea of guilty . . . the court shall admonish the defendant of . . . the fact that if the defendant is not a citizen of the United States of America, a plea of guilty . . . may result in deportation.").

Tamayo concedes that the trial court admonished him in writing regarding immigration consequences, but he asserts that the written admonishment was insufficient because it only warned him that he *could* be deported if he pled guilty rather than that he *absolutely would be* deported. Tamayo further asserts that Attorney Vigil never cautioned him about the ultimate consequences of pleading guilty; he argues that she did not apprise him of the "clear and foreseeable

11

consequences of his guilty plea." Tamayo maintains that he pled guilty merely to avoid confinement but was subject to "mandatory detention for an unspecified period of time"—thereby defeating the purpose of his guilty plea. Accordingly, Tamayo argues that his guilty plea was not made voluntarily, knowingly, or intelligently.

Attorney Vigil submitted an affidavit to the habeas court testifying: (1) that she warned Tamayo in multiple settings that if he received probation upon accepting a plea offer, his probation officer could report him to immigration authorities and he would be deported; (2) that the presiding judges over a couple of his criminal cases had admonished him regarding the immigration consequences; and (3) that he understood that he would be deported if he was taken into custody.

In her affidavit, Attorney Vigil also explained that she told Tamayo that a guilty plea to this case would result in a "permanent bar from admission." She also testified that Tamayo "understood perfectly" at the time of his plea that he "would be deported if immigration got a hold of him." Vigil concluded her affidavit by stating, "There is no question in my mind that [Tamayo] knew he would be deported." Thus, the record belies Tamayo's assertions on appeal that Vigil did not make him aware of the immigration consequences of his plea and that Vigil informed him only of the "general possibility of deportation."

The habeas court found that Attorney Vigil's affidavit was credible; that Tamayo was properly admonished regarding the consequences of his guilty plea;

12

that Vigil's advice regarding the immigration consequences was within the range of competence demanded of attorneys in criminal cases; and that there was no reasonable probability that Tamayo would have insisted on going to trial but for Vigil's alleged errors. In short, the habeas court concluded that Tamayo had failed to overcome the presumption that his plea agreement was entered into knowingly and voluntarily. *See State v. Wilson*, 324 S.W.3d 595, 599 (Tex. Crim. App. 2010). The record supports the trial court's decision. We therefore hold that the trial court did not abuse its discretion by rejecting Tamayo's argument that his guilty plea was not intelligently, knowingly, and voluntarily made, and we overrule his second issue.

### 3. The Habeas Court Did Not Err in Denying Tamayo's Habeas Application Without an Evidentiary Hearing.

In his third issue, Tamayo contends that the habeas court erred by denying his application without holding an evidentiary hearing. He recognizes that "habeas applicants do not ordinarily have a right to an evidentiary hearing." But, he contends that he "should have been afforded such a hearing where he presented new evidence in support of his habeas application." Specifically, he asserts that: (1) the Texas Rules of Civil Procedure requiring an evidentiary hearing whenever there is a genuine dispute of material fact should "fill gaps" of the Texas Code of Criminal Procedure; (2) the habeas court should have granted him a hearing for the purpose of establishing an ineffective assistance claim because he could have questioned Attorney Vigil about whether she had been

13

made aware of and had followed up on an allegedly exculpatory text-message conversation between him and someone named Areeba; and (3) the habeas court should have held an evidentiary hearing to resolve his claim that he was actually innocent. In response, the State argues: (1) that article 11.072 already addresses hearings and does not need the Texas Rules of Civil Procedure to act as a gap filler; (2) that Tamayo does not have a constitutional right to a hearing because he is a post-convict and article 11.072 already provided avenues of discovery in lieu of a hearing; and (3) article 11.072 does not require a hearing if the issues can be resolved without one. Because this issue only requires us to apply the law to the facts without relying on the habeas court's determinations of a witness's credibility or demeanor, we review this issue de novo. *See Martin*, 6 S.W.3d at 526.

The bulk of this issue relies on the theory that in the civil context, the trial court should grant an evidentiary hearing whenever there is a genuine issue of material fact. The Texas Code of Criminal Procedure, Tamayo argues, does not address genuine issues of material fact, and therefore the Texas Rules of Civil Procedure should "fill gaps."

Although there are circumstances in which the Texas Rules of Civil Procedure may be applied in criminal cases,[4] article 11.072 addresses how fact

---

[4]*See, e.g.*, *Arnold v. State*, 853 S.W.2d 543, 544 (Tex. Crim. App. 1993) (holding that rule 18a of the Texas Rules of Civil Procedure, relating to disqualification and recusal of judges, applies in criminal cases).

14

disputes may be resolved in habeas proceedings. *See Ex parte Gonzalez*, 323 S.W.3d 557, 561 (Tex. App.—Waco 2010, pet. ref'd) ("As with article 11.07, the legislature invested trial courts with broad discretion with regard to the means by which controverted fact issues may be resolved in habeas proceedings under article 11.072."). Specifically, article 11.072 provides that "[i]n making its determination, the court may order affidavits, depositions, interrogatories, or a hearing, and may rely on the court's personal recollection." Tex. Code Crim. Proc. Ann. art. 11.072, § 6(b). The statutory use of the word "may" indicates that these provisions are permissive, and accordingly "[w]e have previously held that nothing in article 11.072 *requires* the trial court to conduct a hearing." *Ex parte Sheridan*, No. 02-16-00254-CR, 2017 WL 1535105, at *4 (Tex. App.—Fort Worth Apr. 27, 2017, no pet.) (mem. op., not designated for publication) (citing *Ex parte Cummins*, 169 S.W.3d 752, 757 (Tex. App.—Fort Worth 2005, no pet.)). Further, we and our sister courts have previously held that article 11.072's permissive language and provisions regarding other means by which evidence may be obtained and rendered to the court permit the habeas court to make determinations regarding claims of ineffective assistance of counsel based on the record without holding evidentiary hearings. *See Cummins*, 169 S.W.3d at 757–58; *Ex parte Franklin*, 310 S.W.3d 918, 922–23 (Tex. App.—Beaumont 2010, no pet.) (collecting cases in which courts held that article 11.072 does not require an evidentiary hearing for claims of ineffective assistance of counsel).

15

Tamayo insinuates that the record lacked important evidence to demonstrate Attorney Vigil's ineffective assistance, including notes relating to her representation of Tamayo and any answers to questions by Tamayo relating to allegedly exculpatory evidence he showed her before his guilty plea. It appears, however, that Tamayo did not avail himself of any of the other means by which that same information could have been sought under article 11.072—he never requested the habeas court to order any affidavits, depositions, or interrogatories. *See* Tex. Code Crim. Proc. Ann. art. 11.072, § 6(b).

Because article 11.072 fully addresses the means by which genuine issues of material fact may be handled by the habeas court, we overrule Tamayo's issue to the extent that he claims that the Texas Rules of Civil Procedure require a hearing.

While the bulk of Tamayo's complaint about the denial of a hearing focuses on his contention that the habeas court erred by not granting him a hearing in which he could prove his claim of ineffective assistance of counsel, he also seems to argue that the court erred by not granting him a hearing when he had newly discovered evidence to demonstrate that he was actually innocent: (1) Tamayo argues that he "should have been afforded such a hearing where he presented new evidence in support of his habeas application" and that he wishes to frame his denial-of-a-hearing claim as a Fifth Amendment due process issue; (2) he further contends in his "Conclusion & Prayer" that "the trial court erred and/or abused its discretion in denying [his] Writ where [he] presented new

16

evidence that, if corroborated by further testimonial evidence at a hearing, could exculpate [him]." *See* Tex. R. App. P. 38.1(f) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included.").

Texas courts allow habeas corpus applicants to assert a *Herrera*[5] claim—a bare claim of innocence based solely on newly discovered evidence. *Ex parte Brown*, 205 S.W.3d 538, 544 (Tex. Crim. App. 2006); *Ex parte Watts*, No. 02-17-00198-CR, 2017 WL 4976553, at \*2 (Tex. App.—Fort Worth Nov. 2, 2017, no pet. h.) (mem. op., not designated for publication). Newly discovered evidence "refers to evidence that was not known to the applicant at the time of trial and could not be known to him even with the exercise of due diligence." *Brown*, 205 S.W.3d at 545. The newly discovered evidence "must unquestionably establish [the] applicant's innocence." *Id.*; *see Watts*, 2017 WL 4976553, at \*2 ("[T]o prevail on a *Herrera* claim the applicant must show by clear and convincing evidence that no reasonable juror would have found him guilty in light of the new evidence.").

The Beaumont court of appeals held in *Franklin* that the credibility of newly discovered evidence in a *Herrera* claim "is to be tested" at an evidentiary hearing. 310 S.W.3d at 922. We need not decide whether to follow that decision here because Tamayo has failed to introduce newly discovered evidence that would unquestionably establish his innocence. The evidence that he proposes would

---

[5] *See Herrera v. Collins*, 506 U.S. 390, 113 S. Ct. 853 (1993).

17

establish his innocence includes text messages from an unidentified woman only known as "Areeba" and cellphone records showing that text messages were sent to and received from the phone number of the contact identified as Areeba. According to Tamayo, he received the allegedly exculpatory text messages "immediately after he was released from criminal custody following his initial arrest" and showed "these text messages to [Vigil] well before he pled guilty." Likewise, Tamayo knew or should have known through the exercise of due diligence that the call records would be available before he made his guilty plea. Thus, we cannot conclude that the evidence that Tamayo relies on was "newly discovered." *See Brown*, 205 S.W.3d at 545.

Indeed, even if this evidence was newly discovered, neither the text messages nor call records unquestionably establish Tamayo's innocence. *See id.* This is the entirety of the text exchange included in the record:[6]

> [Tamayo:] Lol did you have work on you cus i found some in my car
>
> [Areeba:] I'm
>
> [Areeba:] My phone was dead but yeah I did!
>
> [Areeba:] Damn that's what happened
>
> [Areeba]: Yeah in the one who was in the front

---

[6]The text-message exchange does not include any names; rather, the screenshots of the exchange only show the incoming phone number of the woman Tamayo identified as "Areeba." The names are presented here for the sake of clarity, but not as a determination that the incoming phone number actually belongs to a woman named "Areeba."

18

[Tamayo:] whasgood wyd

[Tamayo:] I thought it was u messaging me last night when I was asleep i woulda been right over asap

[Areeba:] So I did leave it in your car?

[Areeba:] Whats up tonight

[Tamayo:] My bad i was doin something but foreal Whassup tonight lets chill whassup

At best, this exchange indicates the mere possibility that the owner of the phone number identified by Tamayo as Areeba left something referred to as "work" in Tamayo's car, but it does not clearly identify Areeba, whoever she is, as the owner of the methamphetamine found in Tamayo's car for which he was charged and pled guilty. Neither this text exchange nor the call records, which only help to support the legitimacy of the text-message exchange, unquestionably establish Tamayo's innocence. *See id.*

Because we conclude that Tamayo has failed to introduce newly discovered evidence that affirmatively establishes his innocence, to the extent that he argues that he should have been granted a hearing because he presented newly discovered evidence, we overrule the remainder of his third issue.

### III. CONCLUSION

Having determined that Tamayo's appeal is not moot and having overruled his second and third issues, we affirm the habeas court's order denying relief.

19

/s/ Mark T. Pittman
MARK T. PITTMAN
JUSTICE

PANEL:  WALKER, KERR, and PITTMAN, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  December 7, 2017